# SUPREME COURT OF THE UNITED STATES

## NITRO-LIFT TECHNOLOGIES, L. L. C. *v.* EDDIE LEE HOWARD ET AL.

### ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME COURT OF OKLAHOMA

No. 11–1377. Decided November 26, 2012

PER CURIAM.

State courts rather than federal courts are most frequently called upon to apply the Federal Arbitration Act (FAA), 9 U. S. C. §1 *et seq.*, including the Act's national policy favoring arbitration. It is a matter of great importance, therefore, that state supreme courts adhere to a correct interpretation of the legislation. Here, the Oklahoma Supreme Court failed to do so. By declaring the noncompetition agreements in two employment contracts null and void, rather than leaving that determination to the arbitrator in the first instance, the state court ignored a basic tenet of the Act's substantive arbitration law. The decision must be vacated.

\* \* \*

This dispute arises from a contract between petitioner Nitro-Lift Technologies, L. L. C., and two of its former employees. Nitro-Lift contracts with operators of oil and gas wells to provide services that enhance production. Respondents Eddie Lee Howard and Shane D. Schneider entered a confidentiality and noncompetition agreement with Nitro-Lift that contained the following arbitration clause:

> "'Any dispute, difference or unresolved question between Nitro-Lift and the Employee (collectively the "Disputing Parties") shall be settled by arbitration by a single arbitrator mutually agreeable to the Disputing Parties in an arbitration proceeding conducted in

Houston, Texas in accordance with the rules existing at the date hereof of the American Arbitration Association.'"  Pet. for Cert. 5.

After working for Nitro-Lift on wells in Oklahoma, Texas, and Arkansas, respondents quit and began working for one of Nitro-Lift's competitors.  Claiming that respondents had breached their noncompetition agreements, Nitro-Lift served them with a demand for arbitration.  Respondents then filed suit in the District Court of Johnston County, Oklahoma, asking the court to declare the noncompetition agreements null and void and to enjoin their enforcement.  The court dismissed the complaint, finding that the contracts contained valid arbitration clauses under which an arbitrator, and not the court, must settle the parties' disagreement.

The Oklahoma Supreme Court retained respondents' appeal and ordered the parties to show cause why the matter should not be resolved by application of Okla. Stat., Tit. 15, §219A (West 2011), which limits the enforceability of noncompetition agreements.  Nitro-Lift argued that any dispute as to the contracts' enforceability was a question for the arbitrator.  It relied for support— as it had done before the trial court—upon several of this Court's cases interpreting the FAA, and noted that under *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U. S. 440, 446 (2006), "this arbitration law applies in both state and federal courts."  Record in No. 109,003 (Okla.), p. 273.

The Oklahoma Supreme Court was not persuaded.  It held that despite the "[U. S.] Supreme Court cases on which the employers rely," the "existence of an arbitration agreement in an employment contract does not prohibit judicial review of the underlying agreement."  2011 OK 98, ¶15, n. 20, ¶16, 273 P. 3d 20, 26, n. 20, 27.  For that proposition, the court relied on the "exhaustive overview of the United States Supreme Court decisions construing the Federal Arbitration Act" in *Bruner* v. *Timberlane Manor*

*Ltd. Partnership*, 2006 OK 90, 155 P. 3d 16, which found Supreme Court jurisprudence "not to inhibit our review of the underlying contract's validity." 273 P. 3d, at 26. Finding the arbitration clauses no obstacle to its review, the court held that the noncompetition agreements were "void and unenforceable as against Oklahoma's public policy," expressed in Okla. Stat., Tit. 15, §219A. 273 P. 3d, at 27.

The Oklahoma Supreme Court declared that its decision rests on adequate and independent state grounds. *Id.*, at 23–24, n. 5. If that were so, we would have no jurisdiction over this case. See *Michigan* v. *Long*, 463 U. S. 1032, 1037–1044 (1983). It is not so, however, because the court's reliance on Oklahoma law was not "independent"— it necessarily depended upon a rejection of the federal claim, which was both "'properly presented to'" and "'addressed by'" the state court. *Howell* v. *Mississippi*, 543 U. S. 440, 443 (2005) (*per curiam*) (quoting *Adams* v. *Robertson*, 520 U. S. 83, 86 (1997) (*per curiam*)). Nitro-Lift claimed that the arbitrator should decide the contract's validity, and raised a federal-law basis for that claim by relying on Supreme Court cases construing the FAA. "'[A] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief . . . by citing in conjunction with the claim the federal source of law on which he relies *or a case deciding such a claim on federal grounds . . . .*'" *Howell*, *supra*, at 444 (quoting *Baldwin* v. *Reese*, 541 U. S. 27, 32 (2004); emphasis added). The Oklahoma Supreme Court acknowledged the cases on which Nitro-Lift relied, as well as their relevant holdings, but chose to discount these controlling decisions. Its conclusion that, despite this Court's jurisprudence, the underlying contract's validity is purely a matter of state law for state-court determination is all the more reason for this Court to assert jurisdiction.

Per Curiam

The Oklahoma Supreme Court's decision disregards this Court's precedents on the FAA. That Act, which "declare[s] a national policy favoring arbitration," *Southland Corp.* v. *Keating*, 465 U. S. 1, 10 (1984), provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. §2. It is well settled that "the substantive law the Act created [is] applicable in state and federal courts." *Southland Corp., supra*, at 12; see also *Buckeye, supra*, at 446. And when parties commit to arbitrate contractual disputes, it is a mainstay of the Act's substantive law that attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved "by the arbitrator in the first instance, not by a federal or state court." *Preston* v. *Ferrer*, 552 U. S. 346, 349 (2008); see also *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U. S. 395 (1967). For these purposes, an "arbitration provision is severable from the remainder of the contract," *Buckeye, supra*, at 445, and its validity is subject to initial court determination; but the validity of the remainder of the contract (if the arbitration provision is valid) is for the arbitrator to decide.

This principle requires that the decision below be vacated. The trial court found that the contract contained a valid arbitration clause, and the Oklahoma Supreme Court did not hold otherwise. It nonetheless assumed the arbitrator's role by declaring the noncompetition agreements null and void. The state court insisted that its "[own] jurisprudence controls this issue" and permits review of a "contract submitted to arbitration where one party assert[s] that the underlying agreement [is] void and unenforceable." 273 P. 3d, at 26. But the Oklahoma

Supreme Court must abide by the FAA, which is "the supreme Law of the Land," U. S. Const., Art. VI, cl. 2, and by the opinions of this Court interpreting that law. "It is this Court's responsibility to say what a statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law." *Rivers* v. *Roadway Express, Inc.*, 511 U. S. 298, 312 (1994). Our cases hold that the FAA forecloses precisely this type of "judicial hostility towards arbitration." *AT&T Mobility LLC* v. *Concepcion*, 563 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 8).

The state court reasoned that Oklahoma's statute "addressing the validity of covenants not to compete, must govern over the more general statute favoring arbitration." 273 P. 3d, at 26, n. 21. But the ancient interpretive principle that the specific governs the general (*generalia specialibus non derogant*) applies only to conflict between laws of equivalent dignity. Where a specific statute, for example, conflicts with a general constitutional provision, the latter governs. And the same is true where a specific state statute conflicts with a general federal statute. There is no general-specific exception to the Supremacy Clause, U. S. Const. Art. VI, cl. 2. "'[W]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.'" *Marmet Health Care Center, Inc.* v. *Brown*, 565 U. S. \_\_\_, \_\_\_–\_\_\_ (2012) (*per curiam*) (slip op., at 3–4) (quoting *AT&T Mobility LLC, supra,* at \_\_\_–\_\_\_ (slip op., at 6–7)). Hence, it is for the arbitrator to decide in the first instance whether the covenants not to compete are valid as a matter of applicable state law. See *Buckeye*, 546 U. S., at 445–446.

For the foregoing reasons, the petition for certiorari is granted. The judgment of the Supreme Court of Oklahoma is vacated, and the case is remanded for proceedings not inconsistent with this opinion.

*It is so ordered.*