Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/06/2018 09:14 AM CDT

- 545 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

Citizens of Humanity, LLC, a Delaware limited
liability company, and CM Laundry, LLC,
a California limited liability company,
appellants, v. Applied Underwriters
Captive Risk Assurance Company,
Inc., a British Virgin Islands
company, appellee.

___ N.W.2d ___

Filed April 6, 2018.    No. S-17-178.

1. **Arbitration and Award.** Arbitrability presents a question of law.
2. **Judgments: Appeal and Error.** On a question of law, an appellate court reaches a conclusion independent of the court below.
3. **Final Orders: Arbitration and Award.** A court order staying an action pending arbitration is a final, appealable order under Neb. Rev. Stat. § 25-1902 (Reissue 2016), because it affects a substantial right and is made in a special proceeding.
4. **Federal Acts: Contracts: Arbitration and Award: Intent.** The purpose of the Federal Arbitration Act is to make arbitration agreements as enforceable as other contracts, but not more so.
5. **Federal Acts: Insurance: Contracts: Arbitration and Award.** The Uniform Arbitration Act, at Neb. Rev. Stat. § 25-2602.01(f)(4) (Reissue 2016), limits the enforceability of mandatory arbitration in an agreement concerning or relating to an insurance policy of future policyholder claims.
6. **Federal Acts: Insurance: States.** Under the McCarran-Ferguson Act, state law regulating the business of insurance reverse preempts federal laws that do not specifically govern insurance.
7. ____: ____: ____. Under the McCarran-Ferguson Act, courts consider three elements for determining when a state law controls over a federal statute: (1) The federal statute does not specifically relate to the business of insurance; (2) the state law was enacted for regulating the business of

- 546 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

insurance; and (3) the federal statute, if applied, operates to invalidate, impair, or supersede the state law.

8. **Federal Acts: Insurance: Contracts: Arbitration and Award.** The Federal Arbitration Act does not preempt Neb. Rev. Stat. § 25-2602.01(f)(4) (Reissue 2016).

9. **Courts: Statutes: Intent.** When two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.

10. **Courts: Statutes.** Courts will harmonize overlapping statutes so long as each reaches some distinct cases.

11. **Federal Acts: Contracts: Arbitration and Award.** The Federal Arbitration Act's saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses.

12. **Contracts: Public Policy.** A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.

13. **Courts: Contracts: Arbitration and Award.** Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is decided by the court, not the arbitrator.

14. ____: ____: ____. Disputes about arbitrability for a court to decide include questions such as whether the parties are bound by a given arbitration clause or whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.

15. **Arbitration and Award.** Parties may delegate arbitrability to the arbitrator, because it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide.

16. **Federal Acts: Contracts: Arbitration and Award: Words and Phrases.** A delegation clause is an agreement to arbitrate a threshold issue and is simply an additional, severable, antecedent arbitration agreement the party seeking arbitration asks the court to enforce, and the Federal Arbitration Act operates on this additional arbitration agreement just as it does on any other.

17. **Federal Acts: Contracts: Arbitration and Award**. A delegation agreement, like any other arbitration agreement, is valid under the Federal Arbitration Act except by application of 9 U.S.C. § 2 (2012), which invalidates such agreements upon such grounds as exist at law or in equity for the revocation of any contract.

18. **Federal Acts: Arbitration and Award: Presumptions.** Under the Federal Arbitration Act, there is a presumption of arbitrability, and any doubts are resolved in favor of arbitration.

- 547 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

19. **Federal Acts: Contracts: Arbitration and Award.** Under the Federal Arbitration Act, if a delegation provision is valid, the validity of the remainder of the arbitration contract is for the arbitrator to decide.

20. ____: ____: ____. Two types of validity challenges under the Federal Arbitration Act are (1) a challenge specifically to the validity of the agreement to arbitrate and (2) a challenge to the contract as a whole, either on a ground that directly affects the entire agreement or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. Only the first type of challenge is relevant to a court's determination of a challenged arbitration agreement. A party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.

21. **Federal Acts: Contracts: Arbitration and Award: Courts.** Under the Federal Arbitration Act, a challenge to a delegation provision must be directed specifically to the delegation before the court will assume authority over the matter.

22. **Contracts.** A court must consider a contract as a whole and, if possible, give effect to every part of the contract.

23. **Insurance: Contracts: Arbitration and Award.** A delegation of arbitrability of future policyholder claims in an agreement concerning or relating to an insurance policy is invalid under Neb. Rev. Stat. § 25-2602.01(f)(4) (Reissue 2016).

Appeal from the District Court for Douglas County: Shelly R. Stratman, Judge. Reversed and remanded for further proceedings.

Jonathan J. Papik and Andre R. Barry, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellants.

David A. Blagg and Michael K. Huffer, of Cassem, Tierney, Adams, Gotch & Douglas, and Spencer Y. Kook, of Hinshaw & Culbertson, L.L.P., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Miller-Lerman, J.

### I. NATURE OF CASE

Appellants, Citizens of Humanity, LLC, and CM Laundry, LLC (collectively Citizens), filed a declaratory judgment action

- 548 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

in the district court for Douglas County in connection with a dispute in which appellee, Applied Underwriters Captive Risk Assurance Company, Inc. (AUCRA), claimed it was owed money from Citizens. Citizens appeals from an order of the district court for Douglas County, in which the court granted AUCRA's motion to stay the court case pending arbitration, including arbitration of the issue of arbitrability. Because we conclude that the district court's ruling enforcing delegation of the issue of arbitrability was error, we reverse this ruling and remand the cause for further proceedings.

## II. STATEMENT OF FACTS

Citizens of Humanity is a blue jean manufacturing company organized in Delaware with its principal place of business in California. Its subsidiary, CM Laundry, is organized and has its principal place of business in California, and its business is laundering the blue jeans manufactured by its parent company before they are sold to customers. AUCRA is organized in the British Virgin Islands and has its principal place of business in Douglas County, Nebraska.

### 1. EQUITYCOMP AND THE REINSURANCE PARTICIPATION AGREEMENT

Citizens purchased a workers' compensation insurance package known as the EquityComp program. The EquityComp program is a workers' compensation program marketed by AUCRA and offered through California Insurance Company. The program is sometimes referred to by AUCRA as a "profit-sharing plan." Under this program, Citizens purchased a workers' compensation policy identified as a "guaranteed cost" policy from California Insurance Company and Continental National Indemnity, which are affiliated with AUCRA but are not parties to this appeal. Citizens' "Request to Bind Coverages & Services" for the EquityComp workers' compensation policies stated that issuance of the insurance coverage was conditioned on Citizens' executing a "Reinsurance Participation Agreement" (RPA). Citizens executed the related

- 549 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

RPA with AUCRA on August 8, 2012. The RPA is the subject of this appeal.

By Citizens' participation in the EquityComp program, and by the terms of the RPA, portions of Citizens' premiums and losses billed by the affiliated workers' compensation insurers were to be subsequently ceded to AUCRA. AUCRA then agreed to fund a segregated account or "cell" held by AUCRA. The amount to be funded into the cell would be dependent on a prospective formula set forth in the RPA that would take into account claims filed against Citizens' workers' compensation policies. This was known as Citizens' "loss experience." Citizens, through its segregated cell account, effectively would be partially self-insured, because it would then be responsible for an amount equal to all of its actual losses under the workers' compensation policies, up to a limit. Excess losses, beyond that limit, would be paid by the workers' compensation insurance, but such experience would obligate the insured to fund the cell in a greater amount.

The EquityComp proposal materials claimed that the "Profit Sharing Plan is not a filed retrospective rating plan or dividend plan." However, the RPA required a 3-year minimum contractual commitment and amounts subsequently returned to the insured or increases in premiums were computed based on past loss experience.

Two types of workers' compensation policies—guaranteed cost and retrospective rating plan—have been described in case law, and we find the following description to be consistent with treatise authority. See 5 Steven Plitt et al., Couch on Insurance 3d § 69:16 (2012). The opinion in *Nat. Convention v. Applied Underwriters Captive*, 239 F. Supp. 3d 761, 769 (S.D.N.Y. 2017), states:

A [guaranteed cost] policy essentially fixes insurance premiums at the outset, meaning that the actual cost of the claims against the policy will not cause premiums to fluctuate during the life of the policy. . . . By contrast, a [retrospective rating plan] policy is loss sensitive, meaning

that premiums can fluctuate during the life of the policy depending on the actual cost of the claims . . . .

Retrospective pricing has long been recognized. See *American Ins. Co. v. C.S. Mc Crossan, Inc.*, 829 F.2d 702 (8th Cir. 1987) (discussing retrospective pricing). For purposes of this suit, we view the RPA as an agreement adding a feature of retrospective pricing thereby impacting the underlying "guaranteed cost" workers' compensation policies. And for completeness, we note that our characterization of the RPA is not critical to our disposition, but, rather, as we discuss below, illustrates that the RPA is "concerning or relating to an insurance policy" under Neb. Rev. Stat. § 25-2602.01(f)(4) (Reissue 2016).

AUCRA has patented its "Reinsurance Participation Plan." See "Reinsurance Participation Plan," U.S. Patent No. 7,908,157 B1 (issued Mar. 15, 2011). See, also, *Nat. Convention v. Applied Underwriters Captive, supra*. The patent states as follows:

> One of the challenges of introducing a fundamentally new premium structure into the marketplace is that the structure must be approved by the respective insurance departments regulating the sale of insurance in the states in which the insureds operate.
>
> In the United States, each state has its own insurance department and each insurance department must give its approval to sell insurance with a given premium plan in its respective jurisdiction. Getting approval can be extremely time consuming and expensive, particularly with novel approaches that a department hasn't had experience with before. Also, many states require insurance companies to only offer small sized and medium sized companies a Guaranteed Cost plan, without the option of a retrospective plan. In part, this is because of governmental rules and laws that regulate the insurance industry.
>
> Disclosed herein is a reinsurance based approach to providing non-linear retrospective premium plans to insureds that may not have the option of such a plan directly.

U.S. Patent No. 7,908,157 B1, col. 6, lines 22-40.

- 551 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

The patent further explains that the insured can "have a retrospective rating plan because of the arrangement among the insurance carrier . . . , the reinsurance company . . . , and the insured even though, in fact, the insured has Guaranteed Cost insurance coverage with the insurance carrier." *Id.*, col. 7, lines 51-54. See, also, *Nat. Convention v. Applied Underwriters Captive, supra*.

This patented arrangement has been scrutinized and found noncompliant by several state insurance commissions. The arrangement has been deemed in violation of state insurance laws, generally for the reason that the RPA is considered a collateral agreement that modifies the underlying compliant guaranteed cost policy. *Nat. Convention v. Applied Underwriters Captive, supra* (summarizing insurance commission cease-and-desist orders filed in California, Vermont, and Wisconsin).

## 2. Provisions in the RPA Pertaining to the Arbitration Issue

The RPA includes an arbitration provision which provides, in pertinent part:

13. Nothing in this section shall be deemed to amend or alter the due date of any obligation under this Agreement. Rather, this section is only intended to provide a mechanism for resolving accounting disputes in good faith.

(A) It is the express intention of the parties to resolve any disputes arising under this Agreement without resort to litigation in order to protect the confidentiality of their relationship and their respective businesses and affairs. Any dispute or controversy that is not resolved informally pursuant to sub-paragraph (B) of Paragraph 13 arising out of or related to this Agreement shall be fully determined in the British Virgin Islands under the provisions of the American Arbitration Association.

(B) All disputes between the parties relating in any way to (1) the execution and delivery, construction or enforceability of this Agreement, (2) the management

- 552 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

or operations of the Company, or (3) any other breach or claimed breach of this Agreement or the transactions contemplated herein shall be settled amicably by good faith discussion among all of the parties hereto, and, failing such amicable settlement, finally determined exclusively by binding arbitration in accordance with the procedures provided herein. The reference to this arbitration clause in any specific provision of this Agreement is for emphasis only, and is not intended to limit the scope, extent or intent of this arbitration clause, or to mean that any other provision of this Agreement shall not be fully subject to the terms of this arbitration clause. All disputes arising with respect to any provision of this Agreement shall be fully subject to the terms of this arbitration clause.

The RPA also contains a choice-of-law clause providing for Nebraska law, stating:

16. This Agreement shall be exclusively governed by and construed in accordance with the laws of Nebraska and any matter concerning this Agreement that is not subject to the dispute resolution provisions of Paragraph 13 hereof shall be resolved exclusively by the courts of Nebraska without reference to its conflict of laws.

### 3. Procedural History and Present Dispute

A dispute over costs arose, and AUCRA claimed that Citizens owed it $842,802.78. Citizens contended that its participation in the RPA was premised on assurances of cost savings, but Citizens instead incurred excessive costs under the RPA.

On December 12, 2014, AUCRA filed an arbitration demand with the American Arbitration Association. Citizens filed a counterclaim with the association, alleging that it could not be compelled to arbitrate.

On February 9, 2015, Citizens filed a complaint against AUCRA and other defendants in a trial court in Los Angeles, California. In January 2016, the California trial court overruled

- 553 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

a renewed motion by Citizens to stay the arbitration. In April, Citizens dismissed AUCRA as a defendant in the California action. After AUCRA was dismissed, the remaining defendants filed a "renewed" motion to compel arbitration and stay the California action. On July 14, the California trial court overruled the remaining defendants' motion to compel arbitration. The California court determined that the RPA's arbitration clause was unenforceable under the controlling Nebraska statute, § 25-2602.01(f)(4). On November 22, 2017, the California Court of Appeal affirmed the California trial court's order refusing to compel arbitration. See *Citizens Humanity v. Applied Underwriters*, 17 Cal. App. 5th 806, 226 Cal. Rptr. 3d 1 (2017).

In April 2016, 1 day after it had dismissed AUCRA from the California action, Citizens filed the present action against AUCRA in the district court for Douglas County. An amended complaint was filed on July 25. In this action, Citizens asked the district court to enjoin the arbitration which had been commenced by AUCRA. Citizens alleged that it could not be compelled to arbitrate for various reasons, including the fact that § 25-2602.01(f)(4) prohibits mandatory arbitration provisions in "any agreement concerning or relating to an insurance policy other than a contract between insurance companies including a reinsurance contract." By virtue of is pleading and arguments made to the district court, Citizens challenges the enforceability of arbitration, including the delegation of arbitribility to an arbitrator.

AUCRA filed a motion to dismiss this action or, in the alternative, to stay this action pending arbitration. After a hearing, in an order filed January 19, 2017, the district court sustained the motion to stay this action pending arbitration. In reaching its conclusion, the court reasoned that because Citizens and AUCRA were organized and had principal places of business in different states and the RPA involved interstate commerce, the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 14 (2012), governed its analysis. The court determined that based

- 554 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

on the "broad and sweeping language" of the RPA's arbitration provision, the provision's incorporation of the American Arbitration Association rules, and Citizens lack of a direct challenge to delegation of arbitrability, the parties had "clearly and unmistakably delegated threshold issues of arbitrability to an arbitrator."

Having rejected Citizens' arguments claiming that it was not required to arbitrate, the court sustained AUCRA's motion to stay this action, thus delegating the issue of arbitrability to the arbitrator.

This appeal followed.

### III. ASSIGNMENTS OF ERROR

Citizens assigns error to the district court, for (1) determining that the FAA and not Nebraska state law governed the enforceability of the RPA's arbitration agreement, (2) finding that delegation of arbitrability in the RPA was enforceable rather than finding that it was unenforceable under § 25-2602.01(f)(4), (3) failing to find that the arbitration clause as a whole was unenforceable under § 25-2602.01(f)(4), and (4) staying the case pending arbitration.

### IV. STANDARD OF REVIEW

[1,2] Arbitrability presents a question of law. *Speece v. Allied Professionals Ins. Co.*, 289 Neb. 75, 853 N.W.2d 169 (2014). On a question of law, we reach a conclusion independent of the court below. *Id*.

### V. ANALYSIS

AUCRA contended that under its broad arbitration agreement, the RPA requires all questions concerning construction and enforceability of that agreement, including applicability of § 25-2602.01(f)(4), to be decided by an arbitrator and that the FAA alone governs the RPA's arbitration provision (notwithstanding the RPA's general choice of Nebraska law provision) and thus moved to stay arbitration under the FAA. AUCRA therefore asserts that the district court correctly

- 555 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

reasoned that under FAA jurisprudence, Citizens did not adequately and specifically challenge the RPA arbitration provisions and that therefore, the arbitration should proceed. See *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010).

Citizens contended that because paragraph 16 of the RPA provides that the RPA "shall be exclusively governed" by Nebraska law, the antiarbitration provision of § 25-2602.01(f)(4) renders the arbitration provisions of the RPA, including arbitration of arbitrability, unenforceable. Citizens reasons that because this court has held that § 25-2602.01 regulates the business of insurance and by virtue of the federal McCarran-Ferguson Act, see *Speece v. Allied Professionals Ins. Co., supra*, the court should determine the threshold question of arbitrability. Citizens further asserts that because the arbitration provisions in the RPA are invalid under § 25-2602.01(f)(4), the district court erred when it granted AUCRA's motion to stay the case to permit arbitration.

Below, we examine the relevant statutory framework forming the basis of the parties' dispute and conclude that § 25-2602.01(f)(4) applies to this case and that the arbitration provision delegating the issue of arbitrability to the arbitrator—sometimes referred to as a "delegation clause"—in the RPA is invalid. We explain why the gateway issue of arbitrability should have been decided in the district court, and we reverse, and remand for further proceedings.

### 1. Jurisdiction Is Proper

[3] As an initial matter, we note that a court order staying an action pending arbitration is a final, appealable order under Neb. Rev. Stat. § 25-1902 (Reissue 2016), because it affects a substantial right and is made in a special proceeding. See *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010). See, also, *Shasta Linen Supply v. Applied Underwriters*, 290 Neb. 640, 861 N.W.2d 425 (2015). In this context, a stay has the same effect as a dismissal, because the "parties cannot litigate their dispute in state courts." *Kremer*

- 556 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

*v. Rural Community Ins. Co.*, 280 Neb. at 600, 788 N.W.2d at 548. Therefore, this court has jurisdiction to consider this appeal of the district court's order granting AUCRA's motion to stay the case.

## 2. RELEVANT STATUTES

We first identify the federal and state statutes relevant to our analysis.

### (a) The FAA

The FAA, at 9 U.S.C. § 2, provides, in pertinent part, that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The FAA was enacted in "response to judicial hostility to arbitration," *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97, 132 S. Ct. 665, 181 L. Ed. 2d 586 (2012), and to ensure judicial enforcement of privately made agreements to arbitrate. That is, the FAA "'declare[d] a national policy favoring arbitration.'" *Nitro-Lift Technologies, L. L. C. v. Howard*, 568 U.S. 17, 20, 133 S. Ct. 500, 184 L. Ed. 2d 328 (2012) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984)).

[4] As noted, § 2 of the FAA extends its jurisdiction over arbitration agreements contained within "'contract[s] evidencing a transaction involving commerce'" and governs whether such an arbitration provision is enforceable. *Aramark Uniform & Career Apparel v. Hunan, Inc.*, 276 Neb. 700, 705, 757 N.W.2d 205, 209 (2008). The U.S. Supreme Court has given this jurisdictional phrase a broad interpretation to give expansive scope to the FAA. *Aramark Uniform & Career Apparel v. Hunan, Inc., supra.* See, also, *Kremer v. Rural Community Ins. Co., supra*. However, it has been observed that the purpose of the FAA is "to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint v. Flood &*

- 557 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

*Conklin*, 388 U.S. 395, 404 n.12, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). Thus, an arbitration agreement under the FAA is enforced according to its terms "unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *CompuCredit Corp. v. Greenwood*, 565 U.S. at 98 (quoting *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987)).

### (b) The McCarran-Ferguson Act

As we have explained in previous opinions of this court, Congress passed the McCarran-Ferguson Act, 15 U.S.C. §§ 1011 to 1015 (2012), to overturn a U.S. Supreme Court decision under the Commerce Clause that threatened the continued supremacy of states to regulate "'the activities of insurance companies in dealing with their policyholders.'" *Kremer v. Rural Community Ins. Co.*, 280 Neb. at 604, 788 N.W.2d at 550 (quoting *SEC v. National Securities, Inc.*, 393 U.S. 453, 89 S. Ct. 564, 21 L. Ed. 2d 668 (1969)). It has been stated that the "McCarran-Ferguson Act . . . endows states with plenary authority over the regulation of insurance and, in certain instances, exempts state laws from FAA preemption." *Milmar v. Applied Underwriters*, 58 Misc. 3d 497, 501, 68 N.Y.S.3d 645, 648 (2017).

The McCarran-Ferguson Act sets out the statutory provision relevant to the case before us: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance . . . ." 15 U.S.C. § 1012(b). By virtue of this provision, the federal McCarran-Ferguson Act creates a narrow circumstance under which federal law does not preempt state laws regulating the business of insurance.

### (c) § 25-2602.01

[5] Although state laws vary on whether or not agreements to arbitrate future disputes under an insurance policy are

- 558 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

enforceable, a provision in Nebraska's Uniform Arbitration Act, § 25-2602.01(f)(4), decidedly limits the enforceability of mandatory arbitration of future policyholder claims. See John M. Gradwohl, *Arbitration: Interface of the Federal Arbitration Act and Nebraska State Law*, 43 Creighton L. Rev. 97 (2009).

In relevant part, § 25-2602.01 provides generally for the enforcement of arbitration agreements and states:

> (b) A provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract, if the provision is entered into voluntarily and willingly.

However, subsection (f)(4) of § 25-2602.01, excepts from this provision "any agreement concerning or relating to an insurance policy other than a contract between insurance companies including a reinsurance contract."

In other words, where applied, § 25-2602.01 provides that agreements to arbitrate existing and future agreements are valid and enforceable except in specified circumstances sometimes referred to as "antiarbitration provisions." See *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010). Agreements to arbitrate "concerning or relating to an insurance policy" are one such circumstance where arbitration is not permitted. Such agreements would be invalid, and contrary contract provisions agreed to by the parties do not control over this statutory bar to enforcement of arbitration. See § 25-2602.01(d).

### 3. WHERE THEY INTERACT, THE MCCARRAN-FERGUSON ACT GENERALLY PRESERVES § 25-2602.01(f)(4) FROM PREEMPTION BY THE FAA

The three statutory schemes just described interact in the instant case and, on appeal, present the narrow issues of whether the McCarran-Ferguson Act causes § 25-2602.01(f)(4) to reverse preempt the FAA, thus rendering the delegation

- 559 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

of arbitrability under the RPA invalid and whether the court should have decided this threshold issue.

[6] As noted above, the FAA provides that written provisions for arbitration are valid and enforceable and that the FAA preempts inconsistent state laws that apply solely to the enforceability of arbitration provisions. However, under the McCarran-Ferguson Act, state law regulating the business of insurance reverse preempts federal laws that do not specifically govern insurance. See 1 Steven Plitt et al., Couch on Insurance 3d § 2:5 at 2-28 (2009) (discussing types of state laws "saved" by McCarran-Ferguson Act, including state uniform arbitration acts).

[7] As we have previously stated, in the insurance area under the McCarran-Ferguson Act, courts consider three elements for determining when a state law controls over a federal statute: (1) The federal statute does not specifically relate to the business of insurance; (2) the state law was enacted for regulating the business of insurance; and (3) the federal statute, if applied, operates to invalidate, impair, or supersede the state law. See *Kremer v. Rural Community Ins. Co., supra*.

[8] Applying these elements to § 25-2602.01(f)(4), we have held in previous cases that (1) the FAA is a federal law which does not specifically relate to the business of insurance; (2) § 25-2602.01(f)(4) is a state statute enacted to regulate the business of insurance; and (3) the FAA, if applied, would operate to invalidate, impair, or supersede § 25-2602.01(f)(4). See, *Speece v. Allied Professionals Ins. Co.*, 289 Neb. 75, 853 N.W.2d 169 (2014); *Kremer v. Rural Community Ins. Co., supra*. Based on these conclusions, and applying § 1012(b) of the McCarran-Ferguson Act, we have concluded under the facts of these previous cases that the FAA was reverse preempted by § 25-2602.01(f)(4) but that due to the fact a second federal law relating to insurance was at play in these cases, the second federal law ultimately served to preempt § 25-2602.01(f)(4). See, *Speece v. Allied Professionals Ins. Co., supra*; *Kremer v. Rural Community Ins. Co., supra.* Thus,

- 560 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

unless another applicable federal insurance law directly pre-empts § 25-2602.01(f)(4), agreements to arbitrate future controversies in insurance policies are invalid under Nebraska law. *Kremer v. Rural Community Ins. Co., supra*. See, also, *Speece v. Allied Professionals Ins. Co., supra*. In the instant case, aside from our consideration of the FAA and the McCarran-Ferguson Act, no other federal law has been proposed which bears directly on the RPA. Compare, *Speece v. Allied Professionals Ins. Co., supra* (determining that second federal law, Liability Risk Retention Act of 1986, which specifically related to business of insurance, was not reverse preempted by Nebraska antiarbitration law, § 25-2602.01(f)(4), under McCarran-Ferguson Act); *Kremer v. Rural Community Ins. Co., supra* (determining that second federal law, Federal Crop Insurance Act, which specifically related to business of insurance, was not reverse preempted by Nebraska antiarbitration law, § 25-2602.01(f)(4), under McCarran-Ferguson Act).

[9,10] AUCRA contends that there is an inherent conflict between the FAA and the McCarran-Ferguson Act because the latter implicates § 25-2602.01(f)(4). AUCRA asserts that the FAA, which generally favors arbitration agreements, trumps the other statutes. We believe there is no such conflict. Instead, we note that "'[w]hen two statutes are capable of co-existence . . . it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" *Vimar Seguros y Reaseguros, S. A. v. M/V Sky Reefer*, 515 U.S. 528, 533, 115 S. Ct. 2322, 132 L. Ed. 2d 462 (1995) (quoting *Morton v. Mancari*, 417 U.S. 535, 94 S. Ct. 2474, 41 L. Ed. 2d 290 (1974)). And courts will harmonize overlapping statutes "so long as each reaches some distinct cases." *J. E. M. Ag Supply, Inc. v. Pioneer Hi-Bred International, Inc.*, 534 U.S. 124, 144, 122 S. Ct. 593, 151 L. Ed. 2d 508 (2001). Thus, when two federal statutes, each with its own scope and purpose and imposing different requirements and protections, complement each other, "it would show disregard for the congressional design to hold that

- 561 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

Congress nonetheless intended one federal statute to preclude the operation of the other." *POM Wonderful LLC v. Coca-Cola Co.*, ___ U.S. ___, 134 S. Ct. 2228, 2238, 189 L. Ed. 2d 141 (2014). Below, we explain that the applicable statutes are harmonious.

[11,12] As we read the statutes, there is no conflict between the McCarran-Ferguson Act and the FAA, because, although the FAA generally favors arbitration, through its savings clause—"save upon such grounds as exist at law or in equity for the revocation of any contract"—the FAA does not permit illegal or invalid agreements to arbitrate to be enforced. See 9 U.S.C. § 2. It has been held that the FAA's "saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996)). Illegality and inconsistency with statutorily prescribed public policy are widely recognized general contract defenses. Restatement (Second) of Contracts § 178(1) at 6 (1981) ("[a] promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms"). The illegality of an arbitration "agreement concerning or relating to an insurance policy" under § 25-2602.01(f)(4) would constitute grounds warranting invalidation of that agreement under § 2 of the FAA.

Were we considering a single agreement to arbitrate in an "agreement concerning or relating to an insurance policy," by harmonizing the federal statutory framework and ultimately applying § 25-2602.01(f)(4), the parties' arbitration provision would not be valid on this basis, and our analysis would end here. However, in this case, the issues delegated to the arbitrator in the parties' agreement encompassed arbitrability itself and we must determine whether the court may consider the

parties' assertions regarding the propriety of delegating arbitrability to the arbitrator.

### 4. Threshold Issue of Arbitrability Is Question for the Court, Not Arbitrator, When Party Specifically Challenges Validity of Delegation Agreement

AUCRA contends that the parties clearly and unmistakably agreed to arbitrate threshold issues, including arbitrability, and argues that whether § 25-2602.01 applies to invalidate any feature of the parties' arbitration clause is a question of enforceability of the arbitration agreement, which the parties reserved for the arbitrator. AUCRA further asserts that when considering Citizens' challenge, we should presume the validity of the parties' broad arbitration agreement, including the broad delegation of arbitrability contained in the RPA. AUCRA relies primarily on a U.S. Supreme Court decision applying the FAA to a delegation provision and which concluded under the facts therein to leave "any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010).

### (a) Delegation of Arbitrability

[13,14] It has been held that unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is decided by the court, not the arbitrator. *AT&T Technologies v. Communications Workers*, 475 U.S. 643, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). Disputes about arbitrability for a court to decide include questions such as "'whether the parties are bound by a given arbitration clause'" or "'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *BG Group, PLC v. Republic of Argentina*, ___ U.S. ___, 134 S. Ct. 1198, 1206, 188 L. Ed. 2d 220 (2014) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)). Disputes over "formation of the parties'

- 563 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

arbitration agreement" and "its enforceability or applicability to the dispute" at issue are "matters . . . 'the court' must resolve." *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299-300, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010).

[15-19] Parties, however, may delegate arbitrability to the arbitrator, because "it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide." *BG Group, PLC v. Republic of Argentina*, 134 S. Ct. at 1206. A contractual provision that delegates to the arbitrator all questions regarding the scope or enforceability of an arbitration provision is referred to as a "delegation clause." See, e.g., *Rent-A-Center, West, Inc. v. Jackson, supra*. A delegation clause is an agreement to arbitrate a threshold issue and is simply an additional, severable, antecedent arbitration agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other. *Id*. The additional delegation agreement, like any other arbitration agreement, is valid under the FAA except by application of § 2 of the FAA, which invalidates such agreements "'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. at 70 (quoting 9 U.S.C. § 2). Under the FAA, there is a presumption of arbitrability, and any doubts are resolved in favor of arbitration. *AT&T Technologies v. Communications Workers, supra*. Under the FAA, if the delegation provision is valid, the validity of the remainder of the arbitration contract is for the arbitrator to decide. See *Nitro-Lift Technologies, L. L. C. v. Howard*, 568 U.S. 17, 133 S. Ct. 500, 184 L. Ed. 2d 328 (2012).

### (b) Challenging a Delegation of Arbitrability

A presumption that agreements to arbitrate threshold issues are valid "does not mean that they are unassailable." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. at 71. "If a party challenges the validity under § 2 [of the FAA] of the precise

- 564 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with the agreement under § 4." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. at 71. See, also, *Nitro-Lift Technologies, L. L. C. v. Howard, supra*. Arbitration is purely a matter of contract. *Cornhusker Internat. Trucks v. Thomas Built Buses*, 263 Neb. 10, 637 N.W.2d 876 (2002). Delegation agreements, like other agreements to arbitrate, are not "immunize[d] . . . from judicial challenge," because to do so would be to "elevate it over other forms of contract." *Prima Paint v. Flood & Conklin*, 388 U.S. 395, 404 n.12, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). And, as we have indicated above, "[a]s the 'saving clause' in § 2 [of the FAA] indicates, the purpose of Congress . . . was to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint v. Flood & Conklin*, 388 U.S. at 404 n.12.

[20] Two types of validity challenges under § 2 have been identified. They are (1) a "'challenge[] specifically [to] the validity of the agreement to arbitrate'" and (2) a challenge to "'the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006)). According to the U.S. Supreme Court, only the first type of challenge is relevant to a court's determination of a challenged arbitration agreement. See *Rent-A-Center, West, Inc. v. Jackson, supra.* A party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. *Id*.

In *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. at 71-72, the U.S. Supreme Court examined a delegation clause similar to that at issue in this case, and stated:

- 565 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

Here, the "written provision . . . to settle by arbitration a controversy," 9 U.S.C. § 2, that [the employer] asks us to enforce is the delegation provision—the provision that gave the arbitrator "exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement," . . . Section 2 operates on the specific "written provision" to "settle by arbitration a controversy" that the party seeks to enforce. Accordingly, unless [the objector] challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.

[21] In *Rent-A-Center, West, Inc. v. Jackson, supra*, the Court determined that under the FAA, a challenge to a delegation provision must be directed specifically to the delegation before the court will assume authority over the matter. In examining the objector's challenge, the Court determined that he had raised his challenge to the delegation provision too late in appellate litigation and that thus, the Court would not consider it in light of clear contract language delegating arbitrability. *Id*. In the instant case, the district court grounded its decision on *Rent-A-Center, West, Inc.* and determined, inter alia, that Citizens' challenge was directed to the entire arbitration agreement and that due to a lack of specificity, the resolution of the threshold issue of arbitrability was to be arbitrated before the arbitrator.

### (c) National Litigation of Delegation

We are aware of cases around the country challenging the delegation feature of the RPA, inter alia, on the grounds of state antiarbitration insurance laws similar to § 25-2602.01(f)(4). See, *Minnieland Private Day Sc. v. Applied Underwriters*, 867 F.3d 449 (4th Cir. 2017), *cert. denied* ___ U.S. ___, 138 S. Ct. 926, 200 L. Ed. 2d 203 (2018); *South Jersey Sanitation v. Applied Underwriters*, 840 F.3d 138 (3d Cir. 2016); *Citizens Humanity v. Applied Underwriters*, 17 Cal. App. 5th 806, 226

Cal. Rptr. 3d 1 (2017); *Milmar v. Applied Underwriters*, 58 Misc. 3d 497, 68 N.Y.S.3d 645 (2017); *Milan Exp. Co., Inc. v. Applied Underwriters Captive Risk Assur. Co., Inc.*, 590 Fed. Appx. 482 (6th Cir. 2014); *Jade Apparel, Inc. v. United Assurance, Inc.*, No. A-2001-14T1, 2016 WL 5939470 (N.J. Super. Oct. 13, 2016) (unpublished opinion); *Mountain Valley Property, Inc. v. Applied Risk Services, Inc.*, No. 1:15-CV-187-DBH, 2016 WL 755614 (D. Me. Feb. 25, 2016) (unpublished order); *Randazzo Enterprises, Inc. v. Applied Underwriters Captive Risk Assurance Company, Inc.*, No. 5:14-CV-02374-EJD, 2014 WL 6997961 (N.D. Cal. Dec. 11, 2014) (unpublished order). A circuit split has arisen between the Third and Sixth Circuits and the Fourth Circuit in which the Third and Sixth Circuits have ordered arbitration and the Fourth Circuit has allowed the court to consider a challenge to the RPA's delegation clause. See, *Minnieland Private Day Sc. v. Applied Underwriters, supra*; *South Jersey Sanitation v. Applied Underwriters, supra*; *Milan Exp. Co., Inc. v. Applied Underwriters Captive Risk Assur. Co., Inc., supra*.

Relying primarily on *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010), as did the district court in this case, the Third and Sixth Circuits concluded that when a challenge could apply equally to the arbitration agreement as a whole and the delegation provision, the challenge is not specific to the delegation provision and the delegation provision must be enforced. See, *South Jersey Sanitation v. Applied Underwriters, supra*; *Milan Exp. Co., Inc. v. Applied Underwriters Captive Risk Assur. Co., Inc., supra*. Based on the reasoning discussed below, and contrary to the Third and Sixth Circuits, we favor the approach taken by the Fourth Circuit, because it did not erroneously conflate a challenge to the validity of the RPA's delegation clause and the nature of the inquiry necessary to resolve that challenge. See *Minnieland Private Day Sc. v. Applied Underwriters, supra*. See, also, *Citizens Humanity v. Applied Underwriters, supra*; *Milmar v. Applied Underwriters, supra*.

- 567 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

5. CITIZENS SPECIFICALLY CHALLENGES THE VALIDITY
OF THE AGREEMENTS TO ARBITRATE, INCLUDING
THE ARBITRATION PROVISION DELEGATING
ARBITRABILITY ISSUES, DISTINGUISHING
THIS CASE FROM RENT-A-CENTER,
WEST, INC. V. JACKSON

AUCRA contends that this action for declaratory judgment is based in substantive law and is a challenge to the entire agreement to arbitrate. Given the record, we reject this contention. Instead, we read Citizens' challenge in its amended complaint and in oral arguments at the district court to be a sufficiently specific challenge to the validity of the delegation clause under *Rent-A-Center, West, Inc. v. Jackson, supra*, and a challenge which should have been considered by the district court.

As noted above, in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. at 73, an employee challenged "'the *entire agreement*'" as unconscionable and did not raise a more specific challenge to the delegation provision until later on appeal. (Emphasis in original.) In contrast, Citizens' amended complaint addressed the RPA's arbitration provisions in addition to the underlying RPA. Paragraph 32 alleges: "[AUCRA] cannot compel [Citizens] to arbitrate because the RPA is governed by Nebraska law and under Nebraska law, specifically Neb. Rev. Stat. § 25-2602.01(f)(4), mandatory arbitration provisions . . . are . . . unenforceable." In its prayer for relief, Citizens requested the court to "declare that there is no valid and enforceable agreement to arbitrate the parties' dispute." The parties' dispute, according to the amended complaint, included whether Citizens could be compelled to arbitrate. At the hearing on AUCRA's motion to stay pending arbitration, Citizens made clear at the trial level that its challenge to arbitration included the delegation of arbitrability. Contrary to the type of challenge made in *Rent-A-Center, West, Inc. v. Jackson, supra*, here, Citizens specifically challenges the validity of the arbitration clauses, including the arbitration

- 568 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

provision which delegates arbitrability to the arbitrator, based on § 25-2602.01(f)(4).

[22] As part of resolving Citizens' challenge, we must inquire whether the RPA's delegation clause could be enforced under Nebraska law. However, this additional inquiry necessary to address Citizens' challenge does not make it a challenge to the entire agreement. A court must consider a contract as a whole and, if possible, give effect to every part of the contract. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). At paragraph 16 of the RPA, the parties chose to apply Nebraska law, including Nebraska's Uniform Arbitration Act and necessarily the antiarbitration provision in § 25-2602.01(f)(4). We must apply the Nebraska choice-of-law provision to the challenge to the delegation clause in order to determine whether the delegation clause could be enforced. See, also, *Citizens Humanity v. Applied Underwriters*, 17 Cal. App. 5th 806, 226 Cal. Rptr. 3d 1 (2017). Compare *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227, 190 Cal. Rptr. 3d 159 (2015). In this regard, we note that an arbitration agreement contrary to policy and unenforceable under statute is just as unenforceable as any other illegal contract that is contrary to public policy. See *Prima Paint v. Flood & Conklin*, 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). The unenforceability of a contract which is contrary to public policy is a "generally applicable" doctrine, not one specifically applied to disfavor arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011).

Even though resolving Citizens' challenge may require this court to ask whether the RPA includes an "agreement concerning or relating to an insurance policy" under § 25-2602.01(f)(4), this inquiry does not transform the § 25-2602.01(f)(4) challenge into one implicating the RPA as a whole under *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010). See *Milmar v. Applied Underwriters*, 58 Misc. 3d 497, 68 N.Y.S.3d 645 (2017). Compare *South Jersey Sanitation v. Applied Underwriters*,

- 569 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

840 F.3d 138 (3d Cir. 2016). Citizens' challenge to arbitration based on the preemptive effect of the McCarran-Ferguson Act and § 25-2602.01(f)(4) goes to the validity of the arbitration agreement, including its arbitration provision delegating arbitrability, but not the validity of the RPA as a whole. See, *Rent-A-Center, West, Inc. v. Jackson, supra*; *Milmar v. Applied Underwriters, supra.* See, also, *Minnieland Private Day Sc. v. Applied Underwriters*, 867 F.3d 449 (4th Cir. 2017), *cert. denied* ___ U.S. ___, 138 S. Ct. 926, 200 L. Ed. 2d 203 (2018); *Citizens Humanity v. Applied Underwriters, supra*. Under *Rent-A-Center, West, Inc. v. Jackson*, *supra*, where properly presented, the court must consider the threshold arbitrability issue before it can order arbitration. See, also, *Nitro-Lift Technologies, L. L. C. v. Howard*, 568 U.S. 17, 133 S. Ct. 500, 184 L. Ed. 2d 328 (2012). The district court erred when it failed to inquire about arbitrability.

### 6. The RPA Is an "[A]greement [C]oncerning or [R]elating to an [I]nsurance [P]olicy" and Does Not Evade Application of § 25-2602.01(f)(4) or Fall Into Any of Its Exceptions

Having concluded that Citizens lodged a specific challenge against the validity of the delegation provision as contrary to the antiarbitration provision in § 25-2602.01(f)(4), we next consider whether the RPA is within the scope of that provision. Although AUCRA attempts to evade the ambit of § 25-2602.01(f)(4) by asserting that the RPA is not an insurance policy, we note that § 25-2602.01(f)(4) requires us to determine only whether the RPA is an "agreement concerning or relating to an insurance policy." The phrase "relating to" is to be read broadly and should be interpreted as being comprehensive of the subject indicated. *Central States Found. v. Balka*, 256 Neb. 369, 590 N.W.2d 832 (1999).

We note that in *South Jersey Sanitation v. Applied Underwriters, supra*, the Third Circuit considered our dicta

- 570 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

from *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010), discussing the insurance policies there at issue and determined that our comment suggested that application of § 25-2602.01(f)(4) was limited to agreements in insurance policies. But such an interpretation would render the words "concerning or relating to an insurance policy" meaningless. See § 25-2602.01(f)(4). The whole and every part of a statute must be considered in fixing the meaning of any of its parts. *In re Estate of Evertson*, 295 Neb. 301, 889 N.W.2d 73 (2016). Under the Nebraska statute, whether or not the RPA is itself an insurance policy is not the determinative inquiry; § 25-2602.01(f)(4) applies to agreements which merely are "concerning or relating to" insurance. Compare, *Minnieland Private Day Sc. v. Applied Underwriters, supra* (remanding factual question of whether RPA was "insurance contract" under language of Virginia antiarbitration law); *Minnieland Private Day Sch., Inc. v. AUCRA*, No. 1:15-cv-01695AJT-IDD (E.D. Va. Nov. 9, 2017) (unpublished order) (concluding upon remand as matter of law that RPA is insurance contract).

Notwithstanding the obvious facts, described in our "Statement of Facts" section and repeated below, showing that the RPA is an "agreement concerning or relating to an insurance policy," AUCRA contends that the RPA is reinsurance and is a "contract between insurance companies including a reinsurance contract," and therefore excepted from the antiarbitration import of § 25-2602.01(f)(4). As discussed above, the RPA has the hallmarks of a retrospective rating plan, albeit achieving that similarity through an unusual contractual arrangement. Despite its billing as a "Reinsurance Participation Agreement," the RPA is a mandatory component of a program of workers' compensation insurance and sold with a minimum 3-year term to add a retrospective pricing feature into a guaranteed cost insurance policy. See, e.g., 5 Steven Plitt et al., Couch on Insurance 3d § 69:16 (2012).

The fact that the RPA references a "Reinsurance Treaty," or an additional contract between AUCRA and its affiliated

- 571 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
CITIZENS OF HUMANITY v. APPLIED UNDERWRITERS
Cite as 299 Neb. 545

workers' compensation insurers, does not for purposes of this case convert the RPA into a "reinsurance contract" "between insurance companies" even if the affiliated insurers participate in a pooling arrangement and act as billing agents for the EquityComp program. See § 25-2602.01(f)(4). Citizens is not an insurer, see Neb. Rev. Stat. § 44-102 (Reissue 2010), and the RPA between Citizens and AUCRA is not reinsurance, see Neb. Rev. Stat. § 44-103(16) (Reissue 2010). The RPA was not executed between insurance companies. Contrary to AUCRA's assertion, the RPA is therefore not "a reinsurance contract" nor "between insurance companies" under § 25-2602.01(f)(4). We decline here to characterize the RPA as reinsurance, and, as reflected in other cases, we are not alone in rejecting AUCRA's varied characterizations of its agreement. See, *Citizens Humanity v. Applied Underwriters*, 17 Cal. App. 5th 806, 820, 226 Cal. Rptr. 3d 1, 11 (2017) (taking judicial notice of 2016 consent order entered into by California Insurance Company and California Department of Insurance defining term "RPA" as "'ancillary or collateral to a guaranteed cost workers' compensation insurance policy that covers claims by California workers'"); *Milmar v. Applied Underwriters*, 58 Misc. 3d 497, 68 N.Y.S.3d 645 (2017) (concluding RPA concerns or relates to insurance); *Minnieland Private Day Sch., Inc. v. AUCRA, supra* (determining RPA is insurance contract).

[23] Above, we noted the extensive relationship between the RPA and affiliated policies of workers' compensation insurance throughout the marketing and sale of the EquityComp program, its billing, the creation of a cell in which insurance premiums would be placed, and a retrospective rate pricing feature drawn from the insureds' workers' compensation claims. The RPA was an integral part of the EquityComp program, which provided workers' compensation insurance to Citizens. We conclude that the RPA is an "agreement concerning or relating to an insurance policy other than a contract between insurance companies including a reinsurance

contract" and that thus, § 25-2602.01(f)(4) applies. Because the RPA is within the ambit of Nebraska's antiarbitration statute, § 25-2602.01(f)(4), whereunder certain agreements to arbitrate are prohibited, the RPA arbitration provision which delegates arbitrability is an invalid agreement. Accordingly, the trial court erred when it granted AUCRA's motion to stay the court case so that an arbitrator could decide issues of arbitrability.

## VI. CONCLUSION

In this case, we examine only the district court's decision enforcing the delegation clause in the RPA which had the effect of referring the issue of arbitrability to the arbitrator. Even if Citizens was required to challenge the delegation clause of the RPA under a discrete and specific standard used in the FAA, Citizens properly challenged the validity of the delegation of arbitrability. Giving full effect to the parties' choice of Nebraska law, we harmonize the FAA in conjunction with the McCarran-Ferguson Act and § 25-2602.01(f)(4) and conclude that state law regulating the business of insurance is not preempted by the FAA. Section 25-2602.01(f)(4) invalidates the parties' delegation provision in the RPA and operates here to reserve issues of arbitrability for the court to decide. The district court should have considered Citizens' challenge to the validity of delegating arbitrability to the arbitrator. See Neb. Rev. Stat. § 25-2603(b) (Reissue 2016). Having concluded that questions of arbitrability should have been determined by the district court, not an arbitrator, we reverse the district court's ruling that the issue of arbitrability was delegated to the arbitrator and remand the cause for further proceedings, including the enforceability of the remainder of the arbitration provision.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

KELCH, J., not participating in the decision.
WRIGHT, J., not participating.