Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/12/2019 08:08 AM CST

- 906 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY,
INC., AN IOWA CORPORATION, APPELLANT, V. E.M. PIZZA, INC.,
A CALIFORNIA CORPORATION, APPELLEE.

___ N.W.2d ___

Filed February 12, 2019.    No. A-17-1301.

1. **Jurisdiction: Rules of the Supreme Court: Pleadings: Appeal and Error.** When reviewing an order dismissing a party from a case for lack of personal jurisdiction under Neb. Ct. R. Pldg. § 6-1112(b)(2), an appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.

2. **Motions to Dismiss: Appeal and Error.** In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.

3. **Due Process: Jurisdiction: States.** When determining whether a court has personal jurisdiction over a party, it must first determine whether a state's long-arm statute is satisfied, and if the long-arm statute is satisfied, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process.

4. **Constitutional Law: Jurisdiction: States.** Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2016), provides that a court may exercise personal jurisdiction over a person who has any contact with or maintains any relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

5. **Due Process: Jurisdiction: States.** The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful contacts, ties, or relations.

6. ____: ____: ____. Due process is satisfied where the nonresident defendant's minimum contacts are such that the defendant should reasonably anticipate being haled into court there.

- 907 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

7. **Jurisdiction: States.** A court exercises two types of personal jurisdiction depending upon the facts and circumstances of the case: general personal jurisdiction and specific personal jurisdiction.

8. ____: ____. A court has general personal jurisdiction over a nonresident defendant if the defendant has engaged in continuous and systematic business connections with the forum state.

9. ____: ____. Specific personal jurisdiction arises where the nonresident defendant's contacts with the forum state are neither continuous nor systematic, but the plaintiff's claim arises from the defendant's minimum contacts with the forum.

10. ____: ____. If a court determines that a defendant has sufficient minimum contacts with the forum state, the court must then weigh the facts of the case to determine whether exercising personal jurisdiction would comport with fair play and substantial justice.

11. ____: ____. When determining whether exercising personal jurisdiction over a nonresident defendant would be fair and reasonable, a court may consider the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies.

12. **Jurisdiction: States: Contracts.** Where a choice-of-forum clause is a necessary component of the court's exercise of personal jurisdiction, then the court would have no jurisdiction but for the fact that the parties have consented to its exercise by the choice-of-forum agreement, and the standards contained in the Model Uniform Choice of Forum Act, Neb. Rev. Stat. § 25-413 et seq. (Reissue 2016), apply.

13. **Jurisdiction: States.** A plaintiff's choice of a forum should not be overturned except for weighty reasons, and only when trial in the chosen forum would establish oppressiveness and vexation to the defendant out of all proportion to the plaintiff's convenience, or when the forum is inappropriate because of considerations affecting the court's own administrative and legal problems.

14. ____: ____. In determining whether a state is a reasonably convenient place for the trial of an action under Neb. Rev. Stat. § 25-414(1)(b) (Reissue 2016), courts are required to consider both private and public interest factors.

15. **Appeal and Error.** Errors must be both assigned and argued to be addressed by an appellate court.

Appeal from the District Court for Douglas County: Duane C. Dougherty, Judge. Affirmed.

- 908 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

Jeffrey A. Silver for appellant.

Kristopher J. Covi, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellee.

Moore, Chief Judge, and Riedmann and Welch, Judges.

Riedmann, Judge.

## I. INTRODUCTION

This appeal requires us to determine whether an Iowa corporation made a prima facie case to establish that the Nebraska courts have personal jurisdiction over a California corporation under either Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2016), or the Model Uniform Choice of Forum Act (Choice of Forum Act), Neb. Rev. Stat. § 25-413 et seq. (Reissue 2016). The district court for Douglas County determined personal jurisdiction was lacking and sustained a motion to dismiss. For the following reasons, we affirm.

## II. BACKGROUND

Applied Underwriters Captive Risk Assurance Company, Inc. (AUCRA), brought suit against E.M. Pizza, Inc., to recover $483,000.88 that AUCRA claimed it was owed under the parties' "Reinsurance Participation Agreement" (RPA). AUCRA is an Iowa corporation with its principal place of business in Omaha, Nebraska. E.M. Pizza is a California corporation with its principal place of business in California. AUCRA is an indirect subsidiary of Applied Underwriters, Inc. (Applied), a Nebraska corporation with its principal place of business in Omaha.

Applied offers workers' compensation insurance programs nationwide, one of which is "EquityComp." EquityComp provides workers' compensation insurance "with a risk retention component through Applied's captive, AUCRA." The risk retention component is effected through an RPA. E.M. Pizza, through its insurance agent, submitted a workers' compensation application to Applied in Omaha. In response to the application, Applied generated an EquityComp workers' compensation

- 909 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

program proposal and rate quotation, as well as a compensation program summary and scenarios, which were sent by Applied to E.M. Pizza.

E.M. Pizza's president executed a request for service, allowing Applied to debit E.M. Pizza's bank accounts for payments due under the EquityComp program, and additionally executed an executive officer exclusion form and sent the form to Applied in Omaha. Subsequently, California Insurance Company, an indirect subsidiary of Applied, issued workers' compensation and employer's liability insurance policies to E.M. Pizza for the period of July 1, 2013, through July 1, 2014. The policies were renewed annually through July 1, 2017. The policies were underwritten and issued from Applied's office in Omaha. Each month, E.M. Pizza reported its payroll to Applied in Omaha so that workers' compensation premiums could be calculated. Further, all customer service questions from E.M. Pizza were directed to Applied's office in Omaha and responded to by customer service representatives in Omaha.

The reinsurance/risk sharing component of the EquityComp program was executed by the RPA. Paragraph 13(B) of the RPA contained a forum selection clause stating:

> Any legal suit, action or proceeding arising out of, related to or based upon this agreement, or the transactions contemplated hereby or thereby must only be instituted in the federal courts of the United States of America or the courts of the State of Nebraska, in each case located in Omaha and the county of Douglas, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding. Service of process, summons, notice or other document by mail to such party's address set forth herein shall be effective service of process for any suit, action or other proceeding brought in any such court. The parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action or any proceeding in such courts

- 910 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

and irrevocably waive and agree not to plead or claim in any such court that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

AUCRA alleges that E.M. Pizza owes $483,000.88 under the RPA, and it brought suit to collect the funds. E.M. Pizza filed a motion to dismiss the action for lack of personal jurisdiction, pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(2). E.M. Pizza asserted that it does not currently, nor has it ever, transacted any business within the State of Nebraska; had any officers, directors, employees, sales people, or property located in Nebraska; contracted to supply services or things within Nebraska; caused any tortious injury by any act or omission in Nebraska; or contracted to insure any person, property, or risk within Nebraska. Further, E.M. Pizza asserted that the workers' compensation policy and ancillary documents at issue in this case were all purchased through an agent in California and that the policies at issue are all for workers' compensation coverage for employees solely in California.

Following a hearing on the motion to dismiss at which the only evidence submitted by the parties was in the form of affidavits with accompanying exhibits, the district court entered an order dismissing the suit for lack of personal jurisdiction. It found that the court did not have jurisdiction under Nebraska's long-arm statute or the Choice of Forum Act. Specifically, as to the Choice of Forum Act, the district court found that although E.M. Pizza failed to present a compelling case that jurisdiction in the Nebraska courts would be so burdensomely inconvenient to deny it due process, subjecting E.M. Pizza to this court's jurisdiction would not comport with "'fair play and substantial justice.'" AUCRA timely appealed.

### III. ASSIGNMENTS OF ERROR

AUCRA asserts, restated and renumbered, that the district court erred in finding that (1) it lacked personal jurisdiction over E.M. Pizza under Nebraska's long-arm statute and (2) it

- 911 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

lacked personal jurisdiction over E.M. Pizza under the Choice of Forum Act.

## IV. STANDARD OF REVIEW

[1] When reviewing an order dismissing a party from a case for lack of personal jurisdiction under § 6-1112(b)(2), an appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo. *Nimmer v. Giga Entertainment Media*, 298 Neb. 630, 905 N.W.2d 523 (2018).

[2] In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party. *Id*.

## V. ANALYSIS

AUCRA asserts that the Nebraska courts can exercise personal jurisdiction over E.M. Pizza under both the long-arm statute and the Choice of Forum Act. We analyze each of these in turn starting with the long-arm statute, because the Choice of Forum Act, by its terms, applies only when Nebraska courts would have no jurisdiction but for the fact that the parties have consented to its exercise by the choice-of-forum agreement. See, § 25-414; *Ameritas Invest. Corp. v. McKinney*, 269 Neb. 564, 694 N.W.2d 191 (2005).

### 1. Nebraska's Long-Arm Statute

[3,4] When determining whether a court has personal jurisdiction over a party, it must first determine whether a state's long-arm statute is satisfied, and if the long-arm statute is satisfied, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process. See *RFD-TV v. WildOpenWest Finance*, 288 Neb. 318, 849 N.W.2d 107 (2014). Nebraska's long-arm statute, § 25-536, provides that a court may exercise personal jurisdiction over a person who has any contact with or maintains any relation to this state to afford a basis

- 912 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

for the exercise of personal jurisdiction consistent with the Constitution of the United States. *VKGS v. Planet Bingo*, 285 Neb. 599, 828 N.W.2d 168 (2013). It was the intention of the Legislature to provide for the broadest allowable jurisdiction over nonresidents under Nebraska's long-arm statute. *Id.* Thus, when a state construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the Due Process Clause, the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process. *VKGS v. Planet Bingo, supra*.

[5,6] The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). To subject an out-of-state defendant to personal jurisdiction in the forum court, due process requires the defendant to have minimum contacts with the forum state so as not to offend traditional notions of fair play and substantial justice. *VKGS v. Planet Bingo, supra.* Due process is satisfied where the nonresident defendant's minimum contacts are such that the defendant should reasonably anticipate being haled into court there. See *id.* Further, whether a forum state court has personal jurisdiction over a nonresident defendant depends on whether the defendant's actions created substantial connections with the forum state, resulting in the defendant's purposeful availment of the forum state's benefits and protections. *Id.*

[7,8] A court exercises two types of personal jurisdiction depending upon the facts and circumstances of the case: general personal jurisdiction and specific personal jurisdiction. *Nimmer v. Giga Entertainment Media*, 298 Neb. 630, 905 N.W.2d 523 (2018). A court has general personal jurisdiction over a nonresident defendant if the defendant has engaged in continuous and systematic business connections with the forum state. See *id.* When a court is exercising general personal jurisdiction, the plaintiff's claim does not have to arise directly

- 913 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

from the defendant's conduct in the forum state. See *id*. In the present case, E.M. Pizza did not engage in continuous and systematic business connections in Nebraska, and AUCRA does not appear to assert otherwise. Thus, if the court has personal jurisdiction over E.M. Pizza, it can be only under specific personal jurisdiction.

[9] Specific personal jurisdiction arises where the nonresident defendant's contacts with the forum state are neither continuous nor systematic, but the plaintiff's claim arises from the defendant's minimum contacts with the forum. See *id*. Whether a forum state court has personal jurisdiction over a nonresident defendant depends on whether the defendant's contacts with the forum state are the result of unilateral acts performed by someone other than the defendant, or whether the defendant himself acted in a manner which creates substantial connections with the forum state. *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474, 675 N.W.2d 642 (2004).

[10] If a court determines that a defendant has sufficient minimum contacts with the forum state, the court must then weigh the facts of the case to determine whether exercising personal jurisdiction would comport with fair play and substantial justice. See *VKGS v. Planet Bingo*, 285 Neb. 599, 828 N.W.2d 168 (2013).

(a) Evaluation of Minimum Contacts

Here, the district court found that E.M. Pizza had sufficient minimum contacts with Nebraska; however, it found that it was not fair and reasonable to exercise personal jurisdiction over E.M. Pizza. We agree.

E.M. Pizza has sufficient minimum contacts with Nebraska. It is undisputed that E.M. Pizza is not a Nebraska corporation and does not have a principal place of business in Nebraska. It is also undisputed that no representative of E.M. Pizza ever entered Nebraska for the purpose of negotiating the RPA or any other related agreement between the parties. However, E.M. Pizza did, through an agent, submit an application for

- 914 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

insurance to Applied at its office in Omaha. Further, E.M. Pizza, through its president, executed and faxed a request for service to Applied in Omaha, allowing Applied to debit E.M. Pizza's bank accounts for amounts due under the insurance program. On behalf of E.M. Pizza, its president additionally executed and faxed to Applied an executive officer exclusion form. Moreover, E.M. Pizza submitted monthly payroll reports to Applied in Omaha and directed all of its customer service questions to Applied's office in Omaha.

These contacts are sufficient to satisfy the due process requirement that a nonresident defendant have minimum contacts with the forum state. E.M. Pizza reached out to Nebraska to receive workers' compensation insurance from Applied, thus purposefully availing itself to the Nebraska courts. E.M. Pizza's contacts with Nebraska were not the result of unilateral acts by anyone other than itself. E.M. Pizza argues that the minimum contacts found by the district court were not sufficient, primarily because such contacts were not directed at AUCRA, the plaintiff in this action, but at Applied, AUCRA's parent company. However, the fact remains that E.M. Pizza directed its conduct and contacts to an entity within the state. The law does not require that a defendant's conduct be directed to a specific plaintiff in the forum state; it just requires the defendant to have such minimum contacts with the forum that the defendant could reasonably expect to be haled to court in the forum. See *Quality Pork Internat. v. Rupari Food Servs., supra* (finding that nonresident corporation that transacts business with Nebraska corporation through nonresident third party is subject to personal jurisdiction).

The RPA is an integral part of the workers' compensation policy that E.M. Pizza obtained through Applied. As stated by AUCRA, "[t]his case involves a workers' compensation program under the name and style [EquityComp] offered through Applied. The [p]rogram provides workers' compensation insurance with a risk retention component through Applied's captive, AUCRA. The risk retention component is effected

- 915 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

through [an RPA]." Brief for appellant at 7. In order to "effect the reinsurance/risk sharing component of the [p]rogram," E.M. Pizza was required to execute the RPA. *Id*. at 8. See, also, *Citizens of Humanity v. Applied Underwriters*, 299 Neb. 545, 570, 909 N.W.2d 614, 632 (2018) (identifying RPA as "mandatory component of a program of workers' compensation insurance"). Because the RPA was a requirement to obtain the insurance requested through Applied, it is proper to consider E.M.'s contacts with Applied in determining whether it could reasonably expect to be haled into court in Nebraska for an alleged breach of the RPA. Consequently, the district court was correct in finding that E.M. Pizza had sufficient minimum contacts with the forum state.

## (b) Evaluation of Reasonableness

Having determined that E.M. Pizza has sufficient minimum contacts with the forum, we next must determine whether it is fair and reasonable for the forum court to exercise personal jurisdiction over the nonresident defendant. See *VKGS v. Planet Bingo*, 285 Neb. 599, 828 N.W.2d 168 (2013). The district court determined that it was not fair and reasonable to exercise personal jurisdiction over E.M. Pizza, and we agree.

[11] When determining whether exercising personal jurisdiction over a nonresident defendant would be fair and reasonable, a court may consider the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. See *id.* These other considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Id*.

Here, the district court determined it would not be fair and reasonable for a Nebraska court to exercise jurisdiction over E.M. Pizza. First, a Nebraska court exercising jurisdiction over

E.M. Pizza would be required to make a choice of law determination between Nebraska law and California law. Despite AUCRA's arguments to the contrary, a Nebraska court would likely apply California law to the dispute. It has been held by courts in both Nebraska and California that the RPA is inextricably intertwined with the underlying insurance contract; thus, California's workers' compensation laws will likely govern the RPA. See *Citizens of Humanity v. Applied Underwriters, supra*. See, also, *Citizens of Humanity v. Applied Underwriters*, 17 Cal. App. 5th 806, 226 Cal. Rptr. 3d 1 (2017). A California court is better positioned than a Nebraska court to apply California's complex workers' compensation laws. Moreover, the RPA or portions thereof have been found invalid by the California appellate courts and the California Insurance Commissioner for several reasons, including the failure to file it and have it approved by the California Insurance Department before it was issued. See *Nielsen Contracting v. Applied Underwriters*, 22 Cal. App. 5th 1096, 232 Cal. Rptr. 3d 282 (2018) (identifying Insurance Commissioner's administrative decision *Shasta Linen Supply, Inc. v. California Insurance Commission*, file No. AHB-WCA-14-13 (Cal. Ins. Commr. June 22, 2016), finding RPA invalid), and *Citizens of Humanity v. Applied Underwriters*, 17 Cal. App. 5th 806, 226 Cal. Rptr. 3d 1 (2017). Thus, California has a significant interest in continuing to oversee cases involving this RPA. While the California decisions are not binding on this court, they are persuasive. A Nebraska court exercising jurisdiction under a similar RPA would not further fundamental substantive social policies, nor would it further the judicial system's interest in obtaining the most efficient resolution of the controversy.

Second, California has a substantially greater interest in handling the dispute than does Nebraska. The underlying contract provides workers' compensation insurance for a California employer to be provided to California employees. California courts certainly have a strong interest in hearing disputes concerning California employers and California employees. The

- 917 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

affidavit of E.M. Pizza's president stated that E.M. Pizza purchased the workers' compensation policy and ancillary documents through a broker in California. At no time did anyone associated with E.M. Pizza speak or communicate with anyone in Nebraska. While obtaining insurance through a California agent from a Nebraska corporation was sufficient to create minimum contacts with Nebraska, it is not enough to make it fair and reasonable for a Nebraska court to exercise personal jurisdiction over E.M. Pizza. Moreover, E.M. Pizza has no employees or offices in Nebraska and is not authorized to conduct business in Nebraska; nor has it caused any tortious injury in Nebraska. Although Nebraska does have an interest in providing a forum for Nebraska corporations to seek redress, the judicial system's interest in obtaining the most efficient resolution of the controversy and the shared interest of the several states in furthering fundamental substantive social policies both strongly favor California as the appropriate forum for this action.

The district court was correct in determining that it did not have personal jurisdiction over E.M. Pizza, because despite E.M. Pizza's sufficient minimum contacts with Nebraska, it would not be fair and reasonable to exercise personal jurisdiction under Nebraska's long-arm statute.

### 2. Choice of Forum Act

We turn next to the question of whether the facts establish a prima facie showing that the forum selection clause confers personal jurisdiction over E.M. Pizza in Nebraska. We conclude that they do not.

Paragraph 13(B) of the RPA states:

Any legal suit . . . must only be instituted in the federal courts of the United States of America or the courts of the State of Nebraska, in each case located in Omaha and the county of Douglas, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

- 918 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

[12] Whether the above clause provides a Nebraska court with jurisdiction is analyzed under the Choice of Forum Act, specifically § 25-414, which states in part:

> (1) If the parties have agreed in writing that an action on a controversy may be brought in this state and the agreement provides the *only* basis for the exercise of jurisdiction, a court of this state will entertain the action if (a) the court has power under the law of this state to entertain the action; (b) this state is a reasonably convenient place for the trial of the action; (c) the agreement as to the place of the action was not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means; and (d) the defendant, if within the state, was served as required by law of this state in the case of persons within the state or, if without the state, was served either personally or by certified mail directed to his last-known address.

(Emphasis supplied.) Where a choice-of-forum clause is a necessary component of the court's exercise of personal jurisdiction, then the court would have no jurisdiction but for the fact that the parties have consented to its exercise by the choice-of-forum agreement, and the standards contained in the Choice of Forum Act apply. *Ameritas Invest. Corp. v. McKinney*, 269 Neb. 564, 694 N.W.2d 191 (2005).

Here, because a Nebraska court does not have jurisdiction over E.M. Pizza under Nebraska's long-arm statute, the only basis for jurisdiction is the forum selection clause, which must be valid under § 25-414. The district court found, and the parties agree, that subsections (a), (c), or (d) of § 25-414(1) were not in dispute. The dispute involved § 25-414(1)(b), which requires a finding that "this state is a reasonably convenient place for the trial of the action." Our Supreme Court has held that considerations relevant to the forum non conveniens doctrine are appropriate to aid in the construction of this section. See *Ameritas Invest. Corp. v. McKinney, supra*.

- 919 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

[13] A plaintiff's choice of a forum should not be overturned except for "'weighty reasons,'" and only when trial in the chosen forum would establish oppressiveness and vexation to the defendant out of all proportion to the plaintiff's convenience, or when the forum is inappropriate because of considerations affecting the court's own administrative and legal problems. *Id*. at 574, 694 N.W.2d at 202. When determining whether to disrupt a plaintiff's choice of forum, a trial court should consider practical factors that make trial of the case easy, expeditious, and inexpensive, such as the relative ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the ability to secure attendance of witnesses through compulsory process. *Ameritas Invest. Corp. v. McKinney, supra*. However, it is also appropriate for a court to consider the advantages of having trial in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. *Id*.

The U.S. Supreme Court recently addressed the issue of whether a plaintiff's choice-of-forum clause could be set aside under the doctrine of forum non conveniens when seeking a dismissal or transfer under 28 U.S.C. § 1406(a) (2012). See *Atlantic Marine Constr. Co. v. United States Dist. Court for Western Dist. of Tex.*, 571 U.S. 49, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013). In doing so, the Court identified both private interest factors and public interest factors. The Court stated that when parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. *Id*. In essence, they waive the right to challenge the private interest factors. However, a trial court may consider arguments about public interest factors. *Id*. These public interest factors include the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, and the interest in having the trial of a diversity case in a forum that

- 920 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

is at home with the law. *Id.* These public interest factors are consistent with the factors the Nebraska Supreme Court identified in *Ameritas Invest. Corp. v. McKinney*, 269 Neb. 564, 694 N.W.2d 191 (2005).

Here, the district court applied the standard set forth in *Ameritas Invest. Corp. v. McKinney, supra*, and stated that it did "not see that there would be any greater disadvantage or substantially more inconvenience for [E.M. Pizza] to have to defend this case in Nebraska than there would be for [AUCRA] to have to pursue its cause of action against [E.M. Pizza] in the State of California." This is a correct analysis of the private factors to be weighed in determining whether this state is a reasonably convenient place for the trial of the action. AUCRA argues that once the court made this determination, it should have found personal jurisdiction under the forum selection clause. We disagree.

[14] We read *Ameritas Invest. Corp. v. McKinney, supra*, and *Atlantic Marine Constr. Co. v. United States Dist. Court for Western Dist. of Tex., supra*, to require courts to consider both private and public interest factors when determining whether this state is a reasonably convenient place for the trial of the action under § 25-414(1)(b). This is what the district court did, albeit under the verbiage of "'fair play and substantial justice.'" In doing so, the district court concluded that California has a significantly greater interest in the issues in this case than does Nebraska and that California's judicial system in interpreting its own workers' compensation laws clearly would provide a more efficient resolution of the controversies within this case. We agree.

As set out above, a Nebraska court would likely have to apply California's complex workers' compensation laws to this dispute. We find that this factor weighs heavily against a finding that this state is a reasonably convenient place for the trial of this action as required under § 25-414(1)(b). As stated by Professor Larson in his treatise on workers' compensation law, due to the complexity of workers' compensation

- 921 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

laws, cases in which they are involved are best administered by the individual state's agencies or courts. See 13 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 140.02[4] (2017). Therefore, a California court would be in the best position to interpret and apply its own workers' compensation laws to this dispute which affects primarily California workers.

Finally, the judicial system's interest in obtaining the most efficient resolution of this controversy lies in having this case tried in the California courts. As stated by counsel during oral arguments, there are numerous other cases stemming from similar RPA's that are pending in the Nebraska courts, which consume this State's judicial resources.

We find, on our de novo review of the record, that AUCRA did not make a prima facie showing of jurisdiction and that the district court did not err in granting E.M Pizza's motion to dismiss. Although each party would be equally burdened regardless of the forum chosen, the fact that a Nebraska court would be required to apply California workers' compensation laws to a dispute that primarily affects California workers necessitates that AUCRA's forum selection clause be disregarded. Under § 25-414, Nebraska does not have to be the most convenient forum, but it must be a reasonably convenient forum, and we determine that it is not.

Although E.M. Pizza argues that the entire RPA is void and unenforceable, the Nebraska Supreme Court recently examined an arbitration provision found in a similar RPA involving AUCRA. See *Citizens of Humanity v. Applied Underwriters*, 299 Neb. 545, 909 N.W.2d 614 (2018). The Supreme Court found that the arbitration provision was unenforceable under Nebraska insurance law; however, it did not strike down the RPA as a whole. *Id*. Thus, we confine our analysis to the validity of the forum selection clause and leave the validity of the RPA for another day.

[15] Finally, AUCRA argues that if we find the district court did not err in dismissing the complaint, it should have

- 922 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
APPLIED UNDERWRITERS v. E.M. PIZZA
Cite as 26 Neb. App. 906

done so without prejudice. However, AUCRA did not assign this as error. Errors must be both assigned and argued to be addressed by an appellate court. See *Priesner v. Starry*, 300 Neb. 81, 912 N.W.2d 249 (2018). Therefore, we do not address this argument.

## VI. CONCLUSION

The district court did not err in granting E.M. Pizza's motion to dismiss, because the Nebraska courts do not have jurisdiction under Nebraska's long-arm statute and AUCRA did not present a prima facie basis for personal jurisdiction under the Choice of Forum Act. We therefore affirm the order of the district court.

AFFIRMED.