Air-Sea Packing Group, Inc. v Applied Underwriters, Inc. (2024 NY Slip Op 02032)

Air-Sea Packing Group, Inc. v Applied Underwriters, Inc.

2024 NY Slip Op 02032

Decided on April 17, 2024

Appellate Division, Second Department

Miller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 17, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
ROBERT J. MILLER
DEBORAH A. DOWLING
CARL J. LANDICINO, JJ.

2020-04801
 (Index No. 711035/19)

[*1]Air-Sea Packing Group, Inc., respondent, 
v
Applied Underwriters, Inc., et al., appellants. Appeal by the defendants, in an action, inter alia, to recover damages for fraud and for a judgment declaring that a reinsurance participation agreement between the plaintiff and the defendant Applied Underwriters Captive Risk Assurance Company, Inc., dated April 1, 2014, is void and unenforceable, from an order of the Supreme Court (Marguerite A. Grays, J.), entered May 22, 2020, in Queens County. The order, insofar as appealed from, denied those branches of the defendants' motion which were pursuant to CPLR 3211(a) to dismiss the first, second, fourth, fifth, and sixth causes of action.

DLA Piper LLP (US), New York, NY (Shand S. Stephens, Anthony P. Coles, and Steven M. Rosato of counsel), for appellants.
 Bryan Cave Leighton Paisner LLP, New York, NY (James D. Lawrence, Chris LaRocco, and Suzanne Berger of counsel), for respondent.

MILLER, J.

OPINION & ORDER
This action is just one of many such actions commenced across the country alleging that the defendant Applied Underwriters, Inc. (hereinafter Applied Underwriters), and affiliated entities, all subsidiaries of Berkshire Hathaway, Inc., deceptively circumvented state laws and regulations in the marketing and sale of an unlawful workers' compensation insurance program. Here, the defendants seek to enforce a forum selection clause, in favor of Nebraska, contained in an insurance policy that New York State regulators have found violates New York law. While parties are generally free to select a forum in which to resolve their contractual disputes, here, where it is alleged by the plaintiff, and found by New York State regulators, that New York law has been violated, a foreign corporation may not profit from such violation to the detriment of New York employers and workers. The forum selection clause contained in an illegal insurance policy is not enforceable. As a matter of public policy, New York companies shall not be compelled to litigate in Nebraska to vindicate their rights.
I. Factual and Procedural Background
The plaintiff, Air-Sea Packing Group, Inc., is a New York corporation providing packing, shipping, storage, and transportation services. As an employer in New York, the plaintiff is required to purchase workers' compensation insurance to protect workers and their dependents by providing reasonable compensation and necessary medical benefits in the event of workplace injuries incurred by reason of such employment (see generally New York Hosp. Med. Ctr. of Queens v Microtech Contr. Corp., 98 AD3d 1096, 1096-1097, affd 22 NY3d 501). The defendants, including Applied Underwriters and Applied Underwriters Captive Risk Assurance Company, Inc. (hereinafter AUCRA), which are headquartered in Nebraska, marketed and sold a workers' compensation insurance program in New York known as EquityComp (hereinafter the EquityComp program). As [*2]alleged, all of the defendants are affiliated subsidiaries of Berkshire Hathaway, Inc., which is headquartered in Omaha, Nebraska.
The plaintiff purchased the EquityComp program and participated in it from April 2014 to October 2016. Participation in the EquityComp program required the plaintiff to enter into a "Reinsurance Participation Agreement" (hereinafter RPA) with AUCRA. The RPA included a forum selection clause that provided that any action "arising out of, related to or based upon this agreement, or the transactions contemplated hereby or thereby must only be instituted in . . . the State of Nebraska . . . and each party irrevocably submits to the exclusive jurisdiction of such Court[ ]."
In December 2015, the New York State Department of Financial Services (hereinafter DFS) commenced an investigation into whether Applied Underwriters, AUCRA, and several other defendants violated the Insurance Law and the Financial Services Law by marketing and selling to New York employers "a program consisting of workers' compensation insurance offered with a separate agreement that was not filed with [DFS]." This workers' compensation insurance program was marketed and sold under multiple names, including, as here, the EquityComp program.
In or around 2018, the defendant AUCRA commenced an action in Nebraska against the plaintiff to recover money that allegedly was owed to it under the RPA. In April 2019, that action was dismissed on the ground that Nebraska did not have personal jurisdiction over the plaintiff.
In June 2019, the plaintiff commenced this action, alleging that Applied Underwriters, AUCRA, and the other affiliated defendants made false and deceptive representations about important aspects of the EquityComp program and fraudulently induced the plaintiff to buy the EquityComp program. The plaintiff further alleged that the EquityComp program violated the Insurance Law and constituted a fraudulent scheme whereby the defendants netted millions of dollars in profits without providing promised savings to New York employers [FN1]. As alleged, the defendants touted "up front savings," but failed to mention significant fees that insureds would be expected to pay throughout the life of the EquityComp program and upon cancellation. The plaintiff specifically alleged that the defendants made knowing misrepresentations about the EquityComp program and fraudulently induced the plaintiff to enter into various agreements, including the RPA, as part of the EquityComp program and that the RPA had never been filed with or approved by DFS or the New York Compensation Insurance Rating Board. As pertinent to this appeal, in the first cause of action, the plaintiff sought a judgment declaring that the RPA is void and unenforceable under Insurance Law § 2347. In the second cause of action, the plaintiff sought a judgment declaring that the RPA is void and unenforceable as an unlawful reinsurance agreement. In the fourth cause of action, the plaintiff sought equitable rescission of the RPA. In the fifth cause of action, the plaintiff sought to recover damages for violation of General Business Law § 349. In the sixth cause of action, the plaintiff sought to recover damages for common-law fraud.
On July 17, 2019, in order to avoid litigation, Applied Underwriters, AUCRA, and several other defendants entered into a consent order with DFS. In this consent order, DFS found that the RPAs were unlawfully delivered to New York employers without having been filed with DFS, the "RPAs resulted in fees that were different from the rates in the filed and approved guaranteed-cost policy," and parts of the EquityComp program constituted an unlicensed insurance business. DFS found that, by marketing and selling the EquityComp program in New York, the defendants that signed the consent order violated Insurance Law §§ 2117 and 2324 and Financial Services Law § 408. DFS further found that, in violation of Insurance Law § 1102, Applied Underwriters engaged in an "unlicensed insurance business" and, in violation of Insurance Law § 2307, "AUCRA issued for delivery . . . unfiled policy forms." Pursuant to the consent order, the defendants that signed the consent order stopped selling the EquityComp program in New York and paid a $3 million civil penalty. The parties to the consent order agreed that the consent order would [*3]not constitute evidence of wrongdoing for the purpose of any third-party proceeding, and it would not create liability or waive any defenses of the defendants that signed it.
A. The Defendants' Motion to Dismiss
On August 16, 2016, the defendants moved, inter alia, pursuant to CPLR 3211(a)(1), (3), (7), and (10) to dismiss the first, second, fourth, fifth, and sixth causes of action. Among other things, the defendants argued that these causes of action should be dismissed on the ground that the forum selection clause required that this action be commenced in Nebraska and for failure to state a cause of action.
In an order entered May 22, 2020, the Supreme Court, among other things, denied those branches of the defendants' motion. The defendants appeal.
II. Legal Analysis
A. Enforceability of the Forum Selection Clause
"Under CPLR 3211(a)(1), a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (Leon v Martinez, 84 NY2d 83, 88). "'[A] contractual forum selection clause is documentary evidence that may provide a proper basis for dismissal pursuant to CPLR 3211(a)(1)'" (Landmark Ventures, Inc. v Birger, 147 AD3d 497, 497, quoting Lischinskaya v Carnival Corp., 56 AD3d 116, 123).
Contrary to certain contentions raised by the plaintiff, this action falls within the scope of the RPA's broad forum selection clause (see Couvertier v Concourse Rehabilitation & Nursing, Inc., 117 AD3d 772, 773), and since the enforceability of a forum selection clause involves a procedural rather than a substantive issue, New York law applies despite the RPA's inclusion of a Nebraska choice-of-law clause (see North Am. Elite Ins. Co. v Space Needle, LLC, 200 AD3d 425; Matter of Frankel v Citicorp Ins. Servs., Inc., 80 AD3d 280, 285-286).[FN2]
"Although once disfavored by the courts," New York law now recognizes that contracting parties may freely select a forum to "resolve any disputes over the interpretation or performance of the contract" (Brooke Group v JCH Syndicate 488, 87 NY2d 530, 534; see Di Ruocco v Flamingo Beach Hotel & Casino, 163 AD2d 270, 271). "A contractual forum selection clause is prima facie valid and enforceable unless it is shown by the challenging party to be unreasonable, unjust, in contravention of public policy, invalid due to fraud or overreaching, or it is shown that a trial in the selected forum would be so gravely difficult that the challenging party would, for all practical purposes, be deprived of its day in court" (Somerset Fine Home Bldg., Inc. v Simplex Indus., Inc., 185 AD3d 752, 753 [internal quotation marks omitted]; see Brooke Group v JCH Syndicate 488, 87 NY2d at 534; U.S. Mdse., Inc. v L & R Distribs., Inc., 122 AD3d 613, 614). Here, under the unusual circumstances presented, the forum selection clause is unenforcable on multiple grounds.
1. Public Policy
The forum selection clause requiring the plaintiff to commence this action in Nebraska is unenforceable because enforcement would contravene public policy.
That a forum selection clause is unenforceable if it contravenes public policy (see Somerset Fine Home Bldg., Inc. v Simplex Indus., Inc., 185 AD3d at 753) is consistent with "the familiar rule that illegal contracts, or those contrary to public policy, are unenforceable and . . . the courts will not recognize rights arising from them" (Szerdahelyi v Harris, 67 NY2d 42, 48). The maxims that "[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong" are "dictated by public policy [and] have their foundation in universal law administered in all civilized countries" (McConnell v Commonwealth Pictures Corp., 7 NY2d 465, 469 [internal quotation marks omitted]).
In 1914, "[t]he Workers' Compensation Law was enacted for socioeconomic remediation purposes as a means of protecting work[ers] and their dependents from want in case of injury on the job" (Matter of Johannesen v New York City Dept. of Hous. Preserv. & Dev., 84 NY2d 129, 134 [internal quotation marks omitted]; see New York Hosp. Med. Ctr. of Queens v Microtech Contr. Corp., 98 AD3d at 1096). The statute reflects a "bargain between business and labor—that [*4]workers obtain necessary medical care benefits and compensation for workplace injuries regardless of fault while employers obtain a degree of economic protection from devastating lawsuits" (Castro v United Container Mach. Group, 96 NY2d 398, 401-402 [internal quotation marks omitted]; see Fleming v Graham, 10 NY3d 296, 299; New York Hosp. Med. Ctr. of Queens v Microtech Contr. Corp., 98 AD3d at 1096).
Here, Nebraska-based companies marketed a workers' compensation insurance program to New York employers that allegedly violated New York's Insurance Law. Contrary to the defendants' contention that the complaint contains mere general allegations of fraud, the complaint contains specific allegations of a unique type of fraud, whereby the defendants marketed and sold a workers' compensation insurance program that allegedly violated several provisions of the Insurance Law and misled New York employers about the nature of the EquityComp program. Many of these allegations are consonant with the consent order's findings that some aspects of the EquityComp program violated the Insurance Law.
Specifically, the marketing and sale of the EquityComp program in New York allegedly violated provisions of article 23 of the Insurance Law, which governs property and casualty insurance rates for the following stated purpose: "to promote the public welfare by regulating insurance rates to the end that they not be excessive, inadequate or unfairly discriminatory, to promote price competition and competitive behavior among insurers, to provide rates that are responsive to competitive market conditions, to improve the availability and reliability of insurance and to authorize and regulate cooperative action among insurers within the scope of this article" (id. § 2301). It is clear that one of the legislative goals of article 23 of the Insurance Law is to provide protection to insureds (cf. Dubuisson v Stonebridge Life Ins. Co., 887 F3d 567, 575 [2d Cir] [Insurance Law § 3101, dealing with insurance contracts generally, "appears to have been enacted with the purpose of protecting insureds, not insurance companies"]). Further, public policy concerns underlying the proper provision of workers' compensation insurance coverage have been underscored by New York courts (see e.g. Matter of Laird v All Pro Air Delivery, Inc., 45 AD3d 924, 925; Matter of Cruz v New Millennium Constr. & Restoration Corp., 17 AD3d 19, 23).
We find persuasive certain reasoning by the California Court of Appeal, Sixth District, an intermediate appellate court of that state, in one of the other actions challenging the marketing and sale of the EquityComp program (see Jackpot Harvesting, Inc. v Applied Underwriters, Inc., 33 Cal App 5th at 725). In Jackpot Harvesting, after observing that Applied Underwriters and affiliated entities failed to submit the RPA for prior regulatory approval in violation of California's Insurance Code, the California Court of Appeals held that an arbitration agreement in the EquityComp program was void due to the defendants' violation of California's Insurance Code (see id. at 727, 738). The California Court of Appeals reasoned that, "'[i]n California, workers' compensation insurance (or an adequate substitute) is mandatory, and the Insurance Commissioner is charged with closely scrutinizing insurance plans to protect both workers and their employers. To accomplish this objective, the Legislature mandated that the Commissioner have full access to insurance information through mandatory filing requirements. It follows that a violation of these requirements prevents crucial regulatory oversight and thus renders the unfiled agreement unlawful and void as a matter of law'" (id. at 738, quoting Nielsen Contracting, Inc. v Applied Underwriters, Inc., 22 Cal App 5th 1096, 1118, mod on denial of reh [May 23, 2018]).
Further, we find persuasive the reasoning of the Nebraska Court of Appeals in cases challenging the marketing and sale of the EquityComp program by Applied Underwriters and its affiliates. Insofar as the fraud alleged in the instant action implicates New York's regulatory framework for workers' compensation insurance, New York is "better positioned than a Nebraska court to apply [New York's] complex workers' compensation laws" (Applied Underwriters Captive Risk Assur. Co., Inc. v E.M. Pizza, Inc., 26 Neb App 906, 916, 923 NW2d 789, 799).
For these reasons, enforcement of the forum selection clause would contravene public policy (see generally Szerdahelyi v Harris, 67 NY2d at 48; but cf. Milmar Food Group II, LLC v Applied Underwriters, Inc., 61 Misc 3d 812, 820 [Sup Ct, Orange County]). New York courts should interpret the Insurance Law as it relates to this action, and the plaintiff should be permitted to vindicate its rights in a New York forum.
2. Enforcement Would be Unreasonable and Unjust
The forum selection clause requiring the plaintiff to commence this action in Nebraska is unenforceable because enforcement would be unreasonable and unjust insofar as an intermediate appellate court in Nebraska has all but declined to hear a nearly identical action on the [*5]ground that New York is the better forum. In Milmar Food Group II, LLC v Applied Underwriters, Inc. (61 Misc 3d 812), Applied Underwriters and affiliated defendants marketed and sold the EquityComp program to another New York employer, Milmar Food Group II, LLC (hereinafter Milmar), which later commenced an action for equitable rescission of the RPA and a declaration that the RPA is void under the Insurance Law (see id. at 815-816). Upon a motion by the defendants in the Milmar action, the Supreme Court, Orange County, dismissed the action without prejudice to re-filing in Nebraska based on the forum selection clause in the RPA (see id. at 816, 833). When Milmar recommenced the action in Nebraska, the Douglas County District Court (hereinafter the Nebraska trial court), sua sponte, dismissed the action without prejudice, finding that a determination of whether the RPA is void under New York law involved complex issues regarding New York workers' compensation insurance that would best be decided by New York agencies or courts (see Milmar Food Group II, LLC v Applied Underwriters, Inc., 29 Neb App 714, 723, 958 NW2d 920, 926). The Nebraska trial court further found that similar cases on its docket would consume significant judicial resources (see id.). On appeal, the Nebraska Court of Appeals agreed with the reasoning of the Nebraska trial court (see Milmar, 29 Neb App 714, 958 NW2d 920). In no uncertain terms, the Nebraska Court of Appeals held that, regardless of the RPA's forum selection clause, "New York is the better forum" to decide the disputed issues in light of factors such as "the administrative difficulties flowing from court congestion [and] the local interest in having localized controversies decided at home" (Milmar, 29 Neb App at 724, 722, 958 NW2d at 927, 925 [emphasis omitted]). In light of an outstanding question as to whether New York remained a viable forum due to the dismissal of the action by the Supreme Court, Orange County, the Nebraska Court of Appeals reversed the Nebraska trial court's dismissal order and remanded the action, directing that the action be stayed "on the condition that the case is filed in and accepted by the New York courts" (Milmar, 29 Neb App at 725, 958 NW2d at 927).
This was not the first time that the Nebraska Court of Appeals concluded that Nebraska was not the appropriate forum to litigate an action challenging the marketing and sale of the EquityComp program in another state. In 2019, the Nebraska Court of Appeals held that California courts are "better positioned than a Nebraska court to apply California's complex workers' compensation laws," observing that some or all of the RPA had been "found invalid by the California appellate courts and the California Insurance Commissioner for several reasons, including the failure to file it and have it approved by the California Insurance Department before it was issued" (Applied Underwriters Captive Risk Assur. Co., Inc. v E.M. Pizza, Inc., 26 Neb App at 916, 923 NW2d at 799).
Thus, the Nebraska Court of Appeals has concluded that cases by employers challenging the marketing and sale of the EquityComp program should be litigated in the state in which the workers' compensation insurance scheme is implicated. Furthermore, the Nebraska Court of Appeals essentially declined to litigate such a case brought by a New York employer in the hopes that New York would do so (see Milmar Food Group II, LLC v Applied Underwriters, Inc., 29 Neb App at 725, 958 NW2d at 927)[FN3]. Under these circumstances, enforcement of the forum selection clause requiring the plaintiff to commence this action in Nebraska could deprive the plaintiff of its day in court, or at least deprive it of a fair trial in a viable forum, which would be unreasonable and unjust (see generally U.S. Mdse., Inc. v L & R Distribs., Inc., 122 AD3d at 614; but cf. Breakaway Courier Corp. v Berkshire Hathaway, Inc., 215 AD3d 565, 565-566; Amazing Home Care Servs., [*6]LLC v Applied Underwriters Captive Risk Assur. Co. Inc., 191 AD3d 516, 518.[FN4]
The plaintiff's remaining contention as to the enforceability of the forum selection clause—that it is unenforceable because the agreement is permeated with fraud—need not be reached in light of the foregoing determinations.
B. Dismissal Pursuant to CPLR 3211(a)(7)
1. Private Right of Action
The defendants' contention that the fourth, fifth, and sixth causes of action should be dismissed on the ground that article 23 of the Insurance Law does not provide a private right of action is without merit. Contrary to the defendants' contention, which miscontrues the complaint, none of these causes of action are based solely on violations of the Insurance Law. To the contrary, the fourth and sixth causes of action, which sound in equitable rescission and common-law fraud, respectively, allege conduct separate and apart from a violation of the Insurance Law, including that the defendants misrepresented the amount of the premiums and fraudulently induced the plaintiff to enter into certain contracts as part of the EquityComp program. The fifth cause of action alleges that the defendants engaged in consumer-oriented deceptive acts in violation of General Business Law § 349, which expressly provides a private right of action (see id. § 349[h]; City of New York v Smokes-Spirits.Com, Inc., 12 NY3d 616, 621) and applies to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state (see General Business Law § 349[g]; Farino v Jiffy Lube Intl., 298 AD2d 553, 553).[FN5]
Further, there is no merit to the defendants' contention that the first cause of action, for a declaration that the RPA is void and unenforceable under Insurance Law § 2347, must be dismissed on the ground that article 23 of the Insurance Law does not provide an implied private right of action. As observed by the Supreme Court, in the first cause of action, the plaintiff does not seek fines or penalties under the Insurance Law or any monetary damages. Assuming, without deciding, that this cause of action for declaratory relief constitutes a private right of action (see Schlessinger v Valspar Corp., 686 F3d 81, 87 [2d Cir] ["The usual implied private right of action case seeks to fashion a tort remedy from the violation of a statutory provision"]), under the circumstances here, the plaintiff demonstrated that it has such an implied private right of action.
"Where, as here, a statute does not explicitly provide for a private right of action, recovery may only be had under the statute if a legislative intent to create such a right of action may 'fairly be implied' in the statutory provisions and their legislative history" (Kamins v United Healthcare Ins. Co. of N.Y., Inc., 171 AD3d 715, 716, quoting Sheehy v Big Flats Community Day, 73 NY2d 629, 633). This inquiry involves three factors: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme" (Haar v Nationwide Mut. Fire Ins. Co., 34 NY3d 224, 229 [internal quotation marks omitted]). "The third factor is often noted to be the 'most important'" (Ader v Guzman, 135 AD3d 671, 673, quoting Cruz v TD Bank, N.A., 22 NY3d 61, 70). Where the legislature clearly contemplated administrative enforcement of the statute, the question becomes "'whether, in addition to administrative enforcement, an implied private right of action would be consistent with the legislative scheme'" (AHA Sales, Inc. v Creative Bath Prods., Inc., 58 AD3d 6, 16, quoting Uhr v East Greenbush Cent. School Dist., 94 NY2d 32, 40).
To the extent that the defendants contend that there is a blanket prohibition on any implied private right of action under the Insurance Law, such contention is without merit. For example, this Court has found an implied private right of action under Insurance Law § 3224-a, the Prompt Payment Law, notwithstanding the existence of an administrative enforcement scheme (see Maimonides Med. Ctr. v First United Am. Life Ins. Co., 116 AD3d 207, 208, 215-217, 220; see also Corcoran v Hall & Co., 149 AD2d 165, 177). Indeed, it has been observed that, as a general matter, the Insurance Law "establishes the procedures for enforcement of its various provisions" with the Superintendent, and "[c]ertain sections . . . provide for . . . section-specific penalties for their violation, while others expressly confer a private right of action on aggrieved parties" (National Convention Servs., L.L.C. v Applied Underwriters Captive Risk Assur. Co., Inc., 239 F Supp 3d 761, 778 [SD NY], citing, inter alia, Insurance Law § 4226).
Insurance Law §§ 2320 and 2321 vest certain enforcement powers in the superintendent of DFS. Thus, as to at least some provisions of article 23, the Legislature contemplated administrative enforcement. Insurance Law § 2347, which governs workers' compensation rate changes, provides, in part, that "[a]ny rate change affecting the general rate level for [workers' compensation and employers' liability insurance] shall be approved" by DFS on specified timelines applicable to certain circumstances described in the statute (id. § 2347[a]; see id. §§ 2347[b]; 1113[a][15]). However, section 2347 does not contain a section-specific penalty (see National Convention Servs., L.L.C. v Applied Underwriters Captive Risk Assur. Co., Inc., 239 F Supp 3d at 781). Here, it is clear that the plaintiff is "one of the class for whose particular benefit the statute was enacted" (Haar v Nationwide Mut. Fire Ins. Co., 34 NY3d at 229 [internal quotation marks omitted]) and, under the circumstances present here, private enforcement by way of a declaration that the RPA is void and unenforceable under Insurance Law § 2347 would promote the legislative purposes and be consistent with the legislative scheme (see National Convention Servs., LLC v Applied Underwriters Captive Risk Assur. Co., Inc., 239 F Supp 3d at 781 [observing that, when interpreting provisions of the Insurance Law related to insurance rates, courts have "permitted private parties to recover premiums charged and paid that deviated from the rates filed with [DFS] based on a theory of rescission or unjust enrichment"]; cf. Good v American Pioneer Tit. Ins. Co., 12 AD3d 401, 402).
2. Unlawful Reinsurance Agreement
As noted above, in the second cause of action, the plaintiff seeks a declaration that the RPA is void and unenforceable on the ground that it constitutes an unlawful reinsurance agreement. On a motion to dismiss pursuant to CPLR 3211(a)(7), as made by the defendants herein, "the court must accept the facts alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Benjamin v Yeroushalmi, 212 AD3d 758, 760 [internal quotation marks omitted]). "Where evidentiary materials are considered in support of a motion pursuant to CPLR 3211(a)(7), and the motion is not converted into one for summary judgment, the court must determine whether the plaintiff has a cause of action, not whether the plaintiff has stated one and, unless it has been shown that a material fact as claimed by the plaintiff to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, dismissal should not eventuate" (Recine v Recine, 201 AD3d 827, 830 [internal quotation marks omitted]). Contrary to the defendants' contention, at this stage, it cannot be said as a matter of law that the RPA is not an unlawful reinsurance agreement, as the plaintiff alleges it is in support of the second cause of action, or the functional equivalent thereof (see generally Global Reins. Corp. of Am. v Century Indem. Co., 30 NY3d 508, 512-513; see also Coyle Trucking, Inc. v Applied Underwriters, Inc., 2022 WL 20440837, *1-2, 2022 US Dist LEXIS 244007, *1-6 [D Neb, No. 8:22cv187]).
3. Equitable Rescission and Fraud
Contrary to the defendants' contention, the fourth cause of action, seeking equitable rescission of the RPA, and the sixth cause of action, sounding in common-law fraud, are supported by sufficiently specific allegations. "Fraud sufficient to support [equitable] rescission requires only a misrepresentation that induces a party to enter into a contract resulting in some detriment . . . . Even an innocent misrepresentation will support rescission" (Board of Mgrs. of Soundings Condominium v Foerster, 138 AD3d 160, 164 [citation omitted]). Here, the plaintiff met its burden, in part, by asserting specific allegations that the defendants made knowing misrepresentations about [*7]the EquityComp program and fraudulently induced the plaintiff to enter into the RPA.
Where a cause of action is based on fraud, "the circumstances constituting the wrong shall be stated in detail" (CPLR 3016[b]; see Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 178). However, in certain circumstances, it may be "almost impossible to state in detail the circumstances constituting a fraud where those circumstances are peculiarly within the knowledge of [an adverse] party" (Jered Contr. Corp. v New York City Tr. Auth., 22 NY2d 187, 194; see Abraham v Torati, 219 AD3d 1275, 1280). "Under such circumstances, the heightened pleading requirements of CPLR 3016(b) may be met when the material facts alleged in the complaint, in light of the surrounding circumstances, 'are sufficient to permit a reasonable inference of the alleged conduct' including the adverse party's knowledge of, or participation in, the fraudulent scheme" (High Tides, LLC v DeMichele, 88 AD3d 954, 957, quoting Pludeman v Northern Leasing Sys., Inc., 10 NY3d 486, 492). Here, the plaintiff met its burden by asserting specific allegations that the defendants fraudulently misled New York employers about the nature of the EquityComp program as discussed above.
Further, there is no merit to the defendants' contention that the sixth cause of action, sounding in common-law fraud, should be dismissed on the ground that the plaintiff's "group-pled allegations" do not provide sufficient notice of the tortious conduct committed by each of the defendants. "The test of the sufficiency of a pleading is whether it gives sufficient notice of the transactions, occurrences, or series of transactions or occurrences intended to be proved and whether the requisite elements of any cause of action known to our law can be discerned from its averments" (Dolphin Holdings, Ltd. v Gander & White Shipping, Inc., 122 AD3d 901, 902 [internal quotation marks omitted]). Here, the complaint provides sufficient notice to each of the defendants. Among other reasons, it details the alleged relationship between each defendant under their alleged joint fraudulent scheme and contains an allegation that the defendants "acted in concert as part of a common scheme in connection with the EquityComp program to misrepresent the EquityComp program to fraudulently induce plaintiff to enter into the relevant contracts, specifically omitting that the RPA was prohibited by law and not a guaranteed cost policy." It was further alleged that Applied Underwriters and the defendant Applied Risk Services, Inc., were both involved in the marketing and sale of the EquityComp program, including the preparation and presentation of various documents that misleadingly described the EquityComp program.[FN6]
4. General Business Law § 349
Based on the allegations of the marketing and sale of the EquityComp program set forth above, the plaintiff has stated a cause of action under General Business Law § 349, a broad consumer protection statute that prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state" (see National Convention Servs., L.L.C. v Applied Underwriters Captive Risk Assur. Co., Inc., 239 F Supp 3d at 790-794; Accredited Aides Plus, Inc. v Program Risk Mgt., Inc., 147 AD3d 122, 134), and that, as noted, expressly provides for a private right of action (see General Business Law § 349[h]).
III. Conclusion
In light of the foregoing, the Supreme Court properly denied those branches of the defendants' motion which were pursuant to 3211(a) to dismiss the first, second, fourth, fifth, and sixth causes of action. Accordingly, the order is affirmed insofar as appealed from.
CONNOLLY, J.P., DOWLING and LANDICINO, JJ., concur.
ORDERED that the order is affirmed insofar as appealed from, with costs.
ENTER: Darrell M. Joseph Clerk of the Court

Footnotes

Footnote 1: A cursory review reveals that there are at least 25 similar cases challenging the EquityComp program in at least 9 states (see e.g. National Convention Servs., LLC v Applied Underwriters Captive Risk Assur. Co., Inc., 2019 WL 3409882, *1, 2019 US Dist LEXIS 125810, *3 [SD NY, No. 15cv7063 (JGK)]; Jackpot Harvesting, Inc. v Applied Underwriters, Inc., 33 Cal App 5th 719, 738; Hillyard, Inc. v Applied Underwriters Captive Risk Assur. Co., Inc., 2017 WL 5957816, 2017 US Dist LEXIS 220862 [WD Mo, No. 16-6062CV-SJ-FJG]]).

Footnote 2: To the extent that the plaintiff argues that the forum selection clause is unenforceable under Nebraska law, including the Nebraska Choice of Forum Act, such contentions are misplaced and have been disregarded.

Footnote 3: At oral argument, counsel represented that, after the issuance of the Nebraska Court of Appeals' decision, the Milmar plaintiffs moved for leave to renew in the Supreme Court, Orange County, but the motion was denied as untimely and, inexplicably, on the alternate ground that, although the Nebraska decision provided a "thoughtful and comprehensive review" of applicable law, it did not constitute new facts or new law and the Nebraska litigation "provide[d] plaintiffs with a means to prosecute their claims." As per counsel, the Nebraska stay was lifted and the Milmar plaintiffs proceeded to litigate the case in Nebraska. These subsequent events are de hors the record and, in any event, this Court would not be bound by a decision and order of the Supreme Court, Orange County.

Footnote 4: Although the decision in Milmar, in which the Nebraska Court of Appeals declined to hear a case brought by a New York employer regarding the EquityComp program in the hopes that New York would do so, was issued approximately two years prior to the decision of the Appellate Division, First Department, in Breakaway Courier Corp. v Berkshire Hathaway, Inc. (215 AD3d 565), Milmar was not mentioned in the Breakaway briefs or decision. When the First Department decided Amazing Home Care Servs., LLC v Applied Underwriters Captive Risk Assur. Co., Inc. (191 AD3d 516), the Milmar decision had not yet been issued.

Footnote 5: To the extent that the defendants contend that the second cause of action, for a declaration that the RPA is an unlawful reinsurance agreement (and, thus, unenforceable), should be dismissed on the ground that article 23 of the Insurance Law does not provide a private right of action, this contention is improperly raised for the first time on appeal (see Wedgewood Care Ctr., Inc. v Kravitz, 198 AD3d 124, 137).

Footnote 6: The defendants' contention that the first, second, fourth, and fifth causes of action should be dismissed as insufficient "group-pled allegations" is improperly raised for the first time on appeal (see Wedgewood Care Ctr., Inc. v Kravitz, 198 AD3d at 137).